OPINION OF THE COURT
Alexander, J.
We hold today that Vehicle and Traffic Law § 415-a (5) (a), which authorizes warrantless inspections of vehicle dismantling businesses, and New York City Charter § 436, which authorizes warrantless searches of junkyards and other businesses storing used, discarded or secondhand merchandise, violate the constitutional proscription against unreasonable searches and seizures.
Defendant Joseph Burger is the owner of a junkyard in Brooklyn. Part of his business consists of dismantling automobiles and selling their parts. At about 12:00 noon on November 17, 1982, five plain-clothes New York City police officers assigned to the Auto Crimes Division entered defendant’s junkyard, which was enclosed by a metal fence. According to the testimony of one of the officers, there were no buildings in the yard and it contained numerous vehicles and parts of vehicles. Defendant was present at the time, and the officers inquired as to whether he was licensed to dismantle vehicles. Defendant replied that he was not and informed the officers in response to their questions that he did not have a "police book”.[1] The police told defendant that they were going to perform a warrantless inspection pursuant to Vehicle and Traffic Law § 415-a.[2]
*341 In the course of the inspection, the officers copied down the vehicle identification numbers (VINs) of several vehicles and parts of vehicles. The police also recorded the serial numbers from a wheelchair and a handicapped person’s walker that were found alongside a dumpster. After checking the VINs and the serial numbers, the officers determined that two of the automobiles had been reported stolen, and that a wheelchair and a walker had been in one of them. The property was seized and defendant was charged with two counts of criminal possession of stolen property in the second degree (Penal Law § 165.45 [1] [3]), three counts of criminal possession of stolen property in the third degree (Penal Law § 165.40) and unregistered operation as a vehicle dismantler (Vehicle and Traffic Law § 415-a [1]). Following denial of defendant’s motion to suppress the physical evidence and statements made by him to the arresting officer, defendant pleaded guilty to criminal possession of stolen property in the second degree.
At the hearing on defendant’s motion to suppress, one of the officers, John Vega, testified that the function of the Auto Crimes Division was to make daily inspections of vehicle dismantlers’ yards and that his unit typically conducted about 5 to 10 inspections a day. Officer Vega did not know how defendant’s yard was chosen for inspection that day. He stated that when a police book is not available to check against a yard’s inventory, it is normal procedure to record a random sample of VINs and to determine if any of the vehicles had been reported stolen.
The hearing court denied the motion to suppress, holding that the auto junkyard industry is "pervasively regulated” (see, United States v Biswell, 406 US 311; Colonnade Catering Corp. v United States, 397 US 72) and that Vehicle and Traffic Law § 415-a is constitutional inasmuch as it is sufficiently limited in time, place and scope. Thereafter, reargument of the motion was granted in light of an Appellate Division decision in People v Pace (101 AD2d 336, affd 65 NY2d 684) that implied in a footnote that section 415-a requires the police to obtain a search warrant in instances where the *342 junkyard owner cannot produce a police book (101 AD2d, at p 339, n 1). Upon reargument, the court adhered to its previous determination, holding that the statute’s language authorizes the warrantless inspection of vehicles and parts that are the subject of its record-keeping requirements and that, unlike the situation in Pace, the search in this case was undertaken pursuant to an administrative scheme and not simply as a quest for evidence prompted by police suspicion of criminal activity.
The Appellate Division affirmed, holding that "[i]n the instant case, the police were seeking to administer the regulatory schemes set forth in Vehicle and Traffic Law § 415-a and New York City Charter § 436.[3] The constitutionality of these statutory provisions has recently been upheld by this court in People v Cusumano (108 AD2d 752).” (112 AD2d 1046.)
On this appeal, defendant argues that Vehicle and Traffic Law § 415-a and New York City Charter § 436 are facially unconstitutional in that, regardless of the auto junkyard business’ status as a closely regulated industry; they authorize warrantless searches that are not designed to further any administrative objective. The People respond that the statutes further the substantial State interest in controlling automobile theft by establishing an administrative scheme requiring automobile dismantlers to be licensed and registered and to maintain detailed records of their inventory showing proof of ownership. The People further argue that by permitting unannounced warrantless searches the statutes allow the police to carry out the State’s objective while adequately protecting a junkyard owner’s diminished privacy interest.
We previously have had occasion, in People v Pace (101 AD2d 336, affd 65 NY2d 685, supra), to pass on the validity of a junkyard search purportedly undertaken by the police pursuant to the authority of New York City Charter § 436. There, the Appellate Division held, and we agreed, that the search had been undertaken in order to gather evidence of crime, which the police already had reason to believe had been or *343 was taking place. Thus, the warrantless search could not be validated by reference to the statute and it was, therefore, unnecessary to examine the statute’s constitutionality (see also, People v Brigante, 115 AD2d 547; People v Sullivan, 129 Misc 2d 747). Here, by contrast, the constitutional question is squarely presented since we have before us the type of search contemplated by the statutes.
It is well settled that the Fourth Amendment prohibition against unreasonable searches and seizures is applicable to commercial premises (e.g, Donovan v Dewey, 452 US 594, 598, supra; Marshall v Barlow’s, Inc., 436 US 307, 311-313; Michigan v Tyler, 436 US 499, 504-505; See v City of Seattle, 387 US 541, 545-546; Sokolov v Village of Freeport, 52 NY2d 341; Matter of Glenwood TV v Ratner, 103 AD2d 322, 327, affd 65 NY2d 642, appeal dismissed— US —, 106 S Ct 241). With respect to "certain carefully defined classes of cases” (Michigan v Clifford, 464 US 287, 292, & n 2) involving industries that are deemed "pervasively regulated”, administrative searches are excepted from the general rule requiring warrants. In order to validate a warrantless administrative search, however, the commercial premises must be part of a pervasively regulated industry and the search itself must be part of a regulatory scheme designed to further an urgent State interest (e.g., Donovan v Dewey, 452 US 594, 599-600, supra; United States v Biswell, 406 US 311, supra; Colonnade Catering Corp. v United States, 387 US 72, supra). Also, the State’s ability to conduct warrantless inspections must be essential to the effectuation of an administrative scheme (Donovan v Dewey, 452 US, at pp 600, 602-603, supra; United States v Biswell, 406 US, at p 316, supra; Bionic Auto Parts & Sales v Fahner, 721 F2d 1072, 1077). Finally, the inspection must be authorized by a valid statute that is carefully limited in time, place and scope (e.g., Donovan v Dewey, 452 US, at pp 603-604; United States v Biswell, 406 US, at pp 315-316).
The Supreme Court has distinguished valid administrative inspections from searches that are used to obtain evidence of criminality (see, e.g., Donovan v Dewey, 452 US 594, 598, & n 6, supra; Camara v Municipal Ct., 387 US 523, 530, 535; see also, Michigan v Tyler, 436 US 499, 504-506, supra). In short, an administrative search must serve an administrative purpose; when designed instead to uncover evidence of a crime the traditional requirements of the Fourth Amendment apply (see, e.g., Donovan v Dewey, 452 US, at p 598, n 6; Michigan v Tyler, 436 US, at p 512).
*344 The fundamental defect in the statutes before us is that they authorize searches undertaken solely to uncover evidence of criminality and not to enforce a comprehensive regulatory scheme. The asserted "administrative schemes” here are, in reality, designed simply to give the police an expedient means of enforcing penal sanctions for possession of stolen property. Furthermore, an otherwise invalid search of private property is not rendered reasonable merely because it is authorized by a statute, for to so hold would allow legislative bodies to override the constitutional protections against unlawful searches.
Examination of the statutory schemes authorizing warrant-less searches upheld by the Supreme Court reveals the shortcomings of the statutes under consideration. In Donovan v Dewey (supra), the court upheld warrantless inspections of mines authorized by the Federal Mine Safety and Health Act of 1977 (91 US Stat 1290, 30 USC § 801 et seq.) to determine compliance with health and safety standards promulgated by the Secretary of Labor pursuant to the Act. In United States v Biswell (406 US 311, supra), the court upheld warrantless searches of the premises of firearms dealers authorized by the Gun Control Act of 1968 (82 US Stat 1213, 18 USC et seq.) to determine compliance with the licensing, record-keeping and occupational tax requirements of that statute. Significantly, in both instances the administrative statutes authorize warrant-less inspections to be conducted by agents of the regulatory agency, not police officers.
By contrast, New York City Charter § 436 and Vehicle and Traffic Law § 415-a do little more than authorize general searches, including those conducted by the police, of certain commercial premises. In conducting a search pursuant to section 436 the police clearly are not determining compliance with any administrative or regulatory scheme. Indeed, this provision contains no record-keeping requirements. Rather, it explicitly authorizes searches to be undertaken "in connection with the performance of any police duties” (emphasis added). Vehicle and Traffic Law § 415-a does contain some suggestion of an administrative scheme by imposing licensing and record-keeping requirements, and it authorizes inspectors to make unannounced visits to regulated premises to examine required books and records, as it may properly do (see, e.g., Matter of Glenwood TV v Ratner, 65 NY2d 642, affg on opn of Titone, J., at 103 AD2d 322, appeal dismissed — US —, 106 S Ct 241, supra). It fails to satisfy the constitutional requirements for a *345 valid, comprehensive regulatory scheme, however, inasmuch as it permits searches, such as conducted here, of vehicles and vehicle parts notwithstanding the absence of any records against which the findings of such a search could be compared. Defendant admitted prior to the search that he did not have a police book. Thus, as Officer Vega admitted, the ensuing search was undertaken solely to discover whether defendant was storing stolen property on his premises. Indeed, the People concede in their brief (at 22) that "[t]he immediate purpose of inspecting a vehicle dismantler’s junkyard is to determine whether the dismantler’s inventory includes stolen property.” Because New York City Charter § 436 and Vehicle and Traffic Law § 415-a (5) (a) permit such warrantless searches, they are facially unconstitutional.
Accordingly, the order of the Appellate Division should be reversed, defendant’s motion to suppress granted, defendant’s guilty plea vacated, the counts of the indictment charging criminal possession of stolen property dismissed, and the case remitted to Supreme Court, Kings County, for further proceedings pursuant to CPL 470.55 (2).
Chief Judge Wachtler and Judges Meyer, Simons, Kaye, Titone and Hancock, Jr., concur.
Order reversed, etc.

. A "police book” refers to the record of all vehicles and parts in the possession of a vehicle dismantler required to be kept by Vehicle and Traffic Law § 415-a (5) (a).

. Vehicle and Traffic Law § 415-a provides in part: "5. Records and identification, (a) * * * Every person required to be registered pursuant to this section shall maintain a record of all motor vehicles, trailers, and major component parts thereof, coming into his possession together with a record of the disposition of any such motor vehicle, trailer or part thereof and shall maintain proof of ownership for any motor vehicle, trailer or major component part thereof while in his possession. Such records shall be maintained in a manner and form prescribed by the commissioner. * * * Upon request of an agent of the commissioner or of any police officer and during his *341 regular and usual business hours, a vehicle dismantler shall produce such records and permit said agent or police officer to examine them and any vehicles or parts of vehicles which are subject to the record keeping requirements of this section and which are on the premises * * * The failure to produce such records or permit such inspection on the part of any person required to be registered pursuant to this section as required by this paragraph shall be a class A misdemeanor.”

. New York City Charter § 436 provides that: "The [police] commissioner shall possess powers of general supervision and inspection over all licensed or unlicensed pawnbrokers, vendors, junkshop keepers, junk boatmen, cartmen, dealers in second-hand merchandise and auctioneers within the city; and in connection with the performance of any police duties he shall have power to examine such persons, their clerks and employees and their books, business premises, and any articles of merchandise in their possession”.