■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JOSEPH McIVER, Appellant.—Judgment of the Supreme Court, Bronx County (Richard Price, J.), rendered on December 6, 1983, convicting appellant, after a nonjury trial, of criminal possession of stolen property in the second degree, forgery of a vehicle identification number, illegal possession of a vehicle identification number, criminal possession of a weapon in the third and fourth degrees, criminal possession of a controlled substance in the fourth and seventh degrees, and various violations of the Vehicle and Traffic Law and the Administrative Code of the City of New York, and sentencing him, as a second felony offender, to concurrent indeterminate terms of imprisonment of 5 to 10 years for possession of a controlled substance, 3 to 6 years (two terms) for possession of stolen property and for possession of a weapon, 2 to 4 years (five terms) for possession of stolen property and possession of a weapon, 2 to 4 years (10 terms) for forgery of a vehicle identification number and for possession of a vehicle identification number, and five definite one-year terms of imprisonment for possession of a controlled substance and for possession of a weapon, and fining appellant a total of $3,000 for the statutory and Administrative Code violations, unanimously modified, on the law, to reverse and dismiss the relevant counts of the indictment and, except as so modified, affirmed.

On November 3, 1982, a New York City police detective and seven other officers arrived at defendant's junkyard/disman-

tling/auto-repair business, situated on a large open lot. The detective asked defendant if he had various records and licenses required by the Vehicle and Traffic Law and New York City Administrative Code. Defendant did not. The detective asked to see defendant's "police book" (a registry used by vehicle dismantlers and required by law, it shows the seller of a vehicle or its parts, and also shows who those parts were sold to). Defendant did not keep a "police book". The detective and other police officers then randomly inspected items on the lot, taking down their vehicle identification numbers (VINs). Defendant failed to produce documentation corresponding to the numbers. The detective phoned in the numbers to Auto Crimes Division headquarters. A check showed two of the parts were from cars reported stolen. The detective arrested defendant, read him his *Miranda* warnings, and obtained a search warrant.

Following a search of defendant's property, he was indicted on 25 criminal counts and six violations (three each of the Vehicle and Traffic Law and the city's Administrative Code).

The police conducted their search pursuant to Vehicle and Traffic Law § 415-a (5) (a), which authorizes warrantless inspection of vehicle dismantling businesses, and New York City Charter § 436, which authorizes warrantless searches of junkyards and other businesses storing used, discarded or secondhand merchandise. In a case with similar facts, the New York Court of Appeals held that sections 415-a and 436 violate the constitutional proscription against unreasonable searches and seizures. *(People v Burger,* 67 NY2d 338, *cert granted* — US —, 107 S Ct 61.)

In so ruling, the Court of Appeals reasoned: the 4th Amendment prohibition against unreasonable searches and seizures applies to commercial premises. *(See, Marshall v Barlow's, Inc.,* 436 US 307.) In certain classes of pervasively regulated industries, administrative searches are excepted from the general rule if the administrative search is part of a regulatory scheme to further an urgent State interest. *(See, Donovan v Dewey,* 452 US 594; *United States v Biswell,* 406 US 311.) The Court of Appeals found that Vehicle and Traffic Law § 415-a suggests a regulatory scheme by imposing licensing and record-keeping requirements. Thus, under section 415-a, inspectors may make unannounced visits to examine required books and records. But these visits may not be used solely to discover if defendant had stolen property. *(People v Burger,*

*supra; see also, Donovan v Dewey, supra; Michigan v Tyler,* 436 US 499.)

Since Vehicle and Traffic Law § 415-a permits comparison of auto parts with records in a specified "police book", the absence of a "police book", in this case, made it impossible to carry out an administrative inspection. Instead, the police collected VINs with the express purpose of comparing them *not* to appellant's nonexistent "police book", but to Police Department computer lists of automobiles reported stolen. This was not an administrative search but a warrantless search for criminal evidence and thus unconstitutional. *(See, Camara v Municipal Ct.,* 387 US 523.)

In addition, in *People v Burger (supra),* the Court of Appeals decided that New York City Charter § 436 in no way resembled an administrative or regulatory scheme since it contains no record-keeping requirements.

In the instant case, the trial court found defendant not guilty on 2 of the 25 criminal counts. Evidence for all the counts came to light as a result of the unconstitutional search described above. Accordingly, we are required to dismiss the remaining charges. As to the six violations and the resultant fines, because the Court of Appeals found unconstitutional only those parts of section 415-a that permit warrantless searches, the police were lawfully on the premises and could ask the questions and make the inspections which led to defendant's fines. *(See, People v Burger, supra.)* Therefore, we let stand the fines meted out for violation of bookkeeping and licensing laws. Concur—Murphy, P. J., Kupferman, Ross, Carro and Kassal, JJ. [*See,* 124 AD2d 520.]