OPINION OF THE COURT
William D. Friedmann, J.
Defendant is charged with one count of criminal possession of stolen property in the fourth degree (Penal Law § 165.45 [1] —E felony), and two counts of falsifying business records in the second degree (Penal Law § 175.05 [3] — A misdemeanor).
*562 Here, defendant, the manager of a licensed secondhand car dealer and automotive body shop, seeks to suppress physical evidence (front assembly, and driver’s door), seized by police on October 30, 1990, when they conducted a warrantless "administrative search” of his business premises pursuant to sections 435 and 436 of the New York City Charter.
Defendant contends that the statutes under which the search and seizure were executed had been declared unconstitutional under the provisions of the NY Constitution in People v Burger (67 NY2d 338, revd on other grounds 482 US 691).
Defendant also moves to suppress any statements made to police following his arrest as fruits of an illegal arrest.
RELEVANT FACTS
Relevant factual analysis is required in order to distinguish defendant’s business operation from that of an automobile dismantling business considered in People v Keta (165 AD2d 172 [regulated by Vehicle and Traffic Law § 415-a]).
Detective Richard Dorsty of the Auto Crime Division of the New York City Police Department testified at a combined Mapp/Huntley hearing on April 19, 1991.
His credible testimony indicated that he is a 10-year veteran of the New York City Police Department. He had been assigned to the inspection team of the Auto Crime Division for the past four years. Approximately four or five days of his work week consist of random administrative inspections of junkyards and dismantlers’ businesses. As such, he has extensive training in detection of auto crime and is able to cross-reference parts with VIN numbers.
On October 30, 1990, he was part of a random inspection team assigned to inspect auto shops and dismantlers located in the 100th Precinct (Broad Channel and Rockaway area of Queens). When Detective Dorsty left his office in Flushing, he was not told where his inspection team was going, only that they would stop in the Rockaways, somewhere. Only Dorsty’s sergeant knew exactly where they would stop. According to Dorsty, the Auto Crime Division keeps an address list of dismantlers, but does not keep a list of addresses of repair shops for random inspections. On October 30, 1990, at 11:45 a.m., Dorsty was directed by Sergeant Barr, to stop and make an administrative inspection at 18-11 Cross Bay Boulevard, located in Broad Channel, Queens, New York. This location is the closest repair shop in the 100th Precinct to Dorsty’s office. *563 While heading south on Cross Bay Boulevard, Detective Dorsty and his sergeant stopped at that location which was identified as Formula Collision. They questioned the defendant, Lancelot Craig, who identified himself as the manager. Defendant was questioned as to the business operation. He stated that he repairs cars that are damaged in collisions and sells used cars to the public.
Defendant, according to Dorsty, admitted to using used parts to repair cars but stated he does not sell used parts directly to the public. Upon demand from the inspection team, defendant produced a secondhand dealer’s license for used cars which was issued by the New York City Department of Consumer Affairs. The business was also licensed by the Department of Motor Vehicles as a licensed repair shop, and also by the New York City Department of Consumer Affairs. A certificate of occupancy was also produced which indicated that the premises were being used as an automotive repair shop. Dorsty and his team then proceeded into the repair area and found a number of used parts in the yard abutting the repair area. A random sampling of these parts revealed that a 1989 nose assembly from a Mustang automobile appeared to be stolen. The defendant was then asked whether he kept a police book or other records as to the used parts found in his premises. It should be noted that while Detective Dorsty claims to have been inspecting Formula pursuant to administrative authority, Dorsty first inspected VIN numbers on parts and then requested that defendant produce the police book. This order seems reversed leading the court to conclude the administrative purpose of Dorsty’s visit was merely a pretext for an invasive search for evidence of criminal activity. Defendant indicated he was operating a repair shop and that such records, if any, were kept at Capitol Auto Sales, a licensed dismantler in the Rockaway area.
During the inspection, defendant called Capitol to attempt to retrieve the records with respect to the suspected parts. A representative from Capitol Auto Sales, which owns Formula Collision, came to the inspection site but was unable to provide any records for these parts other than providing a receipt for a 1981 Mustang. Dorsty stated that to his knowledge, there were no open investigations or complaints with respect to Formula and that they were unaware of any relationship between Formula Collision and Capitol Auto Sales. In this so-called "Administrative Inspection” the team was not accompanied by anyone from any administrative *564 agency. It is interesting to note there were no New York State motor vehicle administrative forms filled out for any violations of the motor vehicle law by any member of the Auto Crime Division team, and that while Dorsty has claimed that Formula was randomly selected during an inspection of 100th and 101st Precinct auto repair shops, no other auto repair shops were inspected immediately prior to or after Formula’s inspection.
Following the inspection, defendant was placed under arrest for criminal possession of stolen property in the fourth degree, as the 1989 Mustang parts were apparently from a car that was stolen and an active alarm was still out for them. Defendant was also charged with two counts of falsifying business records in the second degree.
According to Detective Dorsty’s testimony, the inspection team was acting under the authority of New York City Charter §§ 435 and 436.
THE LAW
Initially, the court must determine what sections of the law the "random administrative inspection” was executed under. It appears that the inspection was executed under sections 435 and 436 of the New York City Charter as stated by Detective Dorsty. Detective Dorsty also testified that since Formula Collision was not a dismantler, Vehicle and Traffic Law § 415-a was not applicable, the administrative inspection was performed pursuant to the authority licensing and regulating secondhand dealers under sections 435 and 436 of the New York City Charter.
Section 436 of the New York City Charter provides that: "The [police] commissioner shall possess powers of general supervision and inspection over all licensed or unlicensed pawnbrokers, vendors, junkshop keepers, junk boatmen, cart-men, dealers in second-hand merchandise and auctioneers within the city; and in connection with the performance of any police duties he shall have power to examine such persons, their clerks and employees and their books, business premises, and any articles of merchandise in their possession.”
It should be noted that New York City Charter § 436, pursuant to which the search in the instant cause was conducted, has been the subject matter of many decisions by the courts of this State. (See, People v Burger, 112 AD2d 1046 [1985], revd 67 NY2d 338, supra, mot for stay of remittitur *565 dismissed 68 NY2d 960, revd 482 US 691, supra, appeal dismissed 70 NY2d 828 [1987].)
In People v Burger (67 NY2d 338, 340, supra), the statute was found to "violate the constitutional proscription against unreasonable searches and seizures.” Although the United States Supreme Court granted certiorari in New York v Burger (479 US 812) and reversed the New York Court of Appeals as to Vehicle and Traffic Law § 415-a (5) (a), holding the statute constitutional under the Fourth Amendment of the US Constitution (482 US 691, supra), it is important to note that the United States Supreme Court never reached the issue of the constitutionality of sections 435 and 436 of the New York City Charter as reflected in footnote 13 of that decision which reads as follows: "Because we find the inspection at issue here constitutional under § 415-a 5, we have no reason to reach the question of the constitutionality of § 436 of the New York City Charter.” (Supra, at 703.)
Upon remand to the New York Court of Appeals, the issue of whether section 415-a was constitutional under the NY Constitution was never reached, and the case was dismissed without comment when it was learned by the Court of Appeals that the defendant was not available to obey the court order in the event of an affirmance. (People v Burger, 70 NY2d 828, supra.)
Since the United States Supreme Court has not specifically overruled the New York Court of Appeals on the issue of the constitutionality of sections 435 and 436 of the New York City Charter, the court finds the controlling law is People v Burger (67 NY2d 338, supra). The Appellate Term of the New York State Supreme Court has adopted that viewpoint in People v Lopez (NYLJ, Nov. 18, 1987, at 13, col 3 [App Term, 2d and 11th Jud Dists]), and has held section 436 unconstitutional.
In New York v Burger (482 US 691, 718, n 1, supra), Justice Brennan’s dissenting opinion notes "The Court does not reach the question whether the search was lawful under New York City Charter and Admin. Code § 436 (Supp. 1985). I agree with the analysis of the New York Court of Appeals, holding that this provision is plainly unconstitutional.”
The Appellate Division, Second Department, has declined to rule on the constitutionality of section 436 of the New York City Charter in People v Keta (165 AD2d 172, 176, n 2, supra): "one of the arresting officers testified before the Grand Jury that the inspection was also conducted pursuant to New York *566 City Charter § 436, our conclusion with respect to the constitutionality of Vehicle and Traffic Law § 415-a (5) (a) obviates the need to consider the application of the New York City Charter (see, New York v Burger, 482 US 691, 698, supra). ”
In People v Keta (supra, at 189), Justice Harwood, in his dissent stated: "[n]or can New York City Charter § 436 be used to legitimize the challenged police conduct. That legislative enactment lacks even the time limitation which was among the factors relied on by the United States Supreme Court in upholding Vehicle and Traffic Law § 415-a (5) (a) on Fourth Amendment grounds (see, New York v Burger, supra). ”
Consistent with the reasoning set forth above, this court therefore holds that New York City Charter § 436 is violative of the constitutional protections extended to the citizens of this State through NY Constitution, article I, § 12.
The court finds that the statements allegedly made by the defendant and the search conducted by the Police Department were a by-product of an illegal search and seizure and therefore must be suppressed. (See, Dunaway v New York, 442 US 200.)
Accordingly, the defendant’s motions to suppress are granted in their entirety.