[46 NYS3d 600]

COLLATERAL LOANBROKERS ASSOCIATION OF NEW YORK, INC., et al., Respondents, v CITY OF NEW YORK et al., Appellants.

First Department, February 7, 2017

### APPEARANCES OF COUNSEL

*Zachary W. Carter*, Corporation Counsel, New York City (*Max O. McCann*, *Richard Dearing* and *Susan Greenberg* of counsel), for appellants.

*Kriss, Kriss & Brignola, LLP*, Albany (*Mark C. Kriss* of counsel), for respondents.

*Schlam Stone & Dolan LLP*, New York City (*Richard H. Dolan* of counsel), for amicus curiae.

### OPINION OF THE COURT

SAXE, J.

This appeal concerns a statutory and regulatory scheme comprised of provisions of the General Business Law, the New York City Charter, the Administrative Code of the City of New York, the Rules of the City of New York, and New York City Police Department (NYPD) procedures, which together form a

framework of reporting and inspection requirements applicable to pawnbrokers and other secondhand dealers. Plaintiffs, a statewide association of pawnbrokers, along with various individual pawnbrokers, secondhand dealers, and customers of pawnbrokers and/or secondhand dealers, brought this declaratory judgment action challenging the constitutionality of that statutory and regulatory framework. Relying substantially on *People v Keta (People v Scott)** (79 NY2d 474 [1992]), they contend that the entire statutory and regulatory scheme violates the unreasonable search and seizure prohibition under New York Constitution, article I, § 12. The motion court agreed, and granted plaintiffs' motion for preliminary injunctive relief prohibiting enforcement of the statutes, regulations and procedures. Defendants appeal, arguing that the challenged reporting requirements and inspection programs satisfy the constitutional requirements applicable to closely regulated industries and do not implicate constitutional prohibitions against unreasonable searches and seizures. We now reverse the motion court's order, and conclude that the challenged statutory and regulatory scheme does not violate the New York State Constitution's proscription against unreasonable searches and seizures. While plaintiffs are correct that article I, § 12 of the New York Constitution affords greater protection than the corresponding provision in the Fourth Amendment to the US Constitution (*see People v Keta*, 79 NY2d 474, 497-498 [1992]), those greater protections do not implicate the statutes, regulations and procedures at issue here.

To obtain a preliminary injunction prohibiting enforcement of these laws, regulations and procedures, plaintiffs were required to demonstrate a likelihood of success on the merits, irreparable injury, and a balancing of the equities in their favor (*see* CPLR 6301; *Nobu Next Door, LLC v Fine Arts Hous., Inc.*, 4 NY3d 839, 840 [2005]).

To establish a likelihood of success, plaintiffs rely primarily on *People v Keta*. *Keta* held that former Vehicle and Traffic Law § 415-a (5) (a), which authorized police to conduct random warrantless administrative searches of vehicle dismantling businesses, violated the New York State Constitution's proscription against unreasonable searches and seizures (79 NY2d at 497). Although the United States Supreme Court had previously reversed the New York Court of Appeals in order to

---

\* Since it is the Court of Appeals' separate discussion regarding *People v Keta* that is relevant to these facts, I will cite that case name.

hold that section 415-a (5) did *not* violate the Fourth Amendment's proscription against unreasonable searches and seizures (*see New York v Burger*, 482 US 691 [1987], *revg People v Burger*, 67 NY2d 338 [1986]), the Court of Appeals in *Keta* held that our State Constitution's proscription against unreasonable searches and seizures affords greater protection than the corresponding provision in the United States Constitution. In reliance on those greater protections, the *Keta* Court concluded that the statute violated the privacy rights encompassed within article I, § 12 of the New York State Constitution (*see People v Keta*, 79 NY2d at 497).

However, *People v Keta* does not justify invalidating the challenged statutory and regulatory framework at issue here.

That framework begins with the relevant provisions of General Business Law article 5, now entitled "Collateral Loan Brokers." The antecedents of that article were first enacted in 1909 (*see* L 1909, ch 25, as amended), and some were derived from laws going back to 1883 (*see* L 1883, ch 339, § 1). General Business Law § 40 requires pawnbrokers in New York City to be licensed by the City's Commissioner of Consumer Affairs. Section 43 requires pawnbrokers to maintain a book containing a "description of the goods . . . pawned or pledged, the amount of money loaned thereon, . . . the rate of interest to be paid . . . , the name and residence of the person pawning . . . said goods." Section 45 requires that the books kept by collateral loan brokers "*at all reasonable times be open to the inspection* of . . . the mayor or local licensing authority, . . . [and] *police* inspectors" (emphasis added).

Prior to the 2013 enactment of Local Law No. 149 (2013) of City of New York, Administrative Code of the City of New York § 20-273 required dealers in secondhand goods to keep a book in which they recorded information such as a description of every article purchased or sold and the name, address, and a general description of the person buying or selling the item. It is uncontested that pawnbrokers and secondhand dealers have historically reported transactions on a Second-Hand Article Store Log provided by the NYPD, which requires the store owner to provide the date and time of the transaction, a description of the article, and the name, address, gender, date of birth, and race of the seller. Administrative Code § 20-267 provides that all dealers in secondhand articles, "upon being served with a written notice to do so by a member of the police department, shall report to the police commissioner . . . , a

copy of any of the records required to be kept under section 20-273."

In 2013 New York City adopted Local Law 149, which amended several provisions of the Administrative Code so as to require certain dealers to also create records and make them available in electronic form. Local Law 149 amended Administrative Code § 20-273 by adding an electronic record requirement for transactions involving articles comprised of gold, silver, platinum, or other precious metals, electrical appliances, excluding kitchen equipment, and electrical equipment, computer, or component parts of electrical equipment or computers (Administrative Code § 20-273 [b], [c] [2]). The provisions state that such electronic records "may include real-time sharing or accessing of such records in an electronic format and/or through use of an internet website designated by the police commissioner" (id.). Depending on the type of dealer, the electronic record shall or "may include . . . digital photographs . . . in accordance with specifications as provided by rule of the police commissioner" (id.).

Prior to the enactment of Local Law 149, Administrative Code § 20-277 authorized the police commissioner to require pawnbrokers "to report to such commissioner, upon blank forms to be furnished by the police department, a description of all goods, articles or things . . . pawned or pledged," as well as "a general description as to sex, color and apparent age of every person depositing such pledges." Local Law 149 amended Administrative Code § 20-277 so as to add an electronic record component. As amended, the provision now permits the use of an Internet website designated by the police commissioner, and allows the police commissioner to require that the forms recording the transactions include "identifying information regarding any pledgors or persons redeeming any articles pledged or pawned, including name, address, phone number, date of birth, sex, and race or ethnicity" (Administrative Code § 20-277 [a], [b]). The amended section 20-277 further provides that "[r]ecords required to be kept by pawnbrokers pursuant to this section shall be open to the inspection of . . . any police officer . . . or any other governmental officer or employee authorized by the state or local law" (Administrative Code § 20-277 [d]).

The related regulations promulgated in the Rules of the City of New York authorize the Commissioner of the New York City Department of Consumer Affairs (DCA) to enter a licensee's

premises in order to verify statutory and regulatory compliance and to inspect the required records (6 RCNY 1-16 [b]). Such inspections are to "be conducted at least once in every two-year period," with "additional inspections [to] be conducted if an inspection reveals alleged violations" and "whenever the [DCA] receives information alleging violation of said chapters or regulations" (6 RCNY 1-16 [c]).

The Rules of the City of New York promulgated to implement Local Law 149 of 2013 are found in 38 RCNY 21-02 to 21-09. In addition, new procedures were adopted by the NYPD, outlined in a 1998 memorandum from George A. Grasso, then Deputy Commissioner of Legal Matters with the NYPD, and in the NYPD's Patrol Guide Procedure No. 214-38.

The analysis employed by the Court of Appeals in *Keta*, in addressing the Vehicle and Traffic Law's statutory authorization of random warrantless searches of vehicle dismantling businesses, does not warrant the injunctive relief sought by plaintiffs here. The Court's analysis in *Keta* focused on "the so-called 'administrative search' exception to the Fourth Amendment's probable cause and warrant requirements" (79 NY2d at 498). Here, the statutory and regulatory framework at issue consists of two distinct components: not merely inspection requirements involving targeted, on-premises administrative inspections by government officials, but also substantial reporting requirements, involving submission of transactional information to the government.

To the extent the statutory and regulatory framework involves transactional reporting requirements, it does not involve either physical inspections or administrative searches of a business or its records; instead, it merely requires the submission of information in which the businesses have little, if any, expectation of privacy. Transactional reporting requirements imposed in a regulated industry that sufficiently describe and limit the information to be provided and are reasonably related to the regulatory authority of the agency to which the information is provided do not trigger constitutional protections against unreasonable searches and seizures (*see California Bankers Assn. v Shultz*, 416 US 21, 67 [1974]). The reported information, whether in traditional paper form or electronic format, is part of a "document[ ] prepared in compliance with regulatory requirements," in which there is "little or no expectation of privacy" (*Matter of Glenwood TV v Ratner*, 103 AD2d 322, 328 [2d Dept 1984] [internal quotation marks

omitted], *affd* 65 NY2d 642 [1985], *appeal dismissed* 474 US 916 [1985]; *see also People v Guerra*, 65 NY2d 60, 64 [1985]).

Even if we focus on those provisions that authorize inspections, and characterize them as administrative searches, plaintiffs failed to demonstrate a likelihood that they will prevail. The Court of Appeals in *Keta* acknowledged the continued viability of an "administrative search" exception to the constitutional requirements of probable cause and warrants. While that exception "cannot be invoked where . . . the [administrative] search is 'undertaken solely to uncover evidence of criminality' and the underlying regulatory scheme is 'in reality, designed simply to give the police an expedient means of enforcing penal sanctions' " (79 NY2d at 498, quoting *People v Burger*, 67 NY2d 338, 344 [1986]), a regulatory administrative search scheme can pass muster under New York's Constitution where it is "pervasive and include[s] detailed standards in such matters as, for example, the operation of the business and the condition of the premises" (*Keta*, 79 NY2d at 499).

Subsequent to its *Keta* decision, the Court also explained that warrantless administrative searches of closely regulated businesses are permissible where "the regulatory statute authorizing the search prescribes specific rules to govern the manner in which the search is conducted" (*People v Quackenbush*, 88 NY2d 534, 541 [1996]), as long as these rules are "designed to guarantee the certainty and regularity of application" so as "to provide either a meaningful limitation on the otherwise unlimited discretion the statute affords or a satisfactory means to minimize the risk of arbitrary and/or abusive enforcement" (*id.* at 542 [internal quotation marks and ellipsis omitted]).

Unlike the Vehicle and Traffic Law provision considered in *Keta*, the statutory and regulatory scheme challenged here was not created "solely to uncover evidence of criminality" or "designed simply to give the police an expedient means of enforcing penal sanctions" (79 NY2d at 498 [internal quotation marks omitted]). Rather, its impact is primarily to ensure that proper protections are in place to *avoid* criminality and the need for penal sanctions. The supervision and regulation of pawnbrokers and secondhand dealers serves to protect customers who pledge goods as collateral for short-term loans, by ensuring that they are charged lawful interest rates and that goods are held for the statutory period (*see* National Pawnbro-

kers Association, Frequently Asked Questions, https:// www.nationalpawnbrokers.org/faq/ [accessed Jan. 27, 2017]; General Business Law §§ 44 [1], [2]; 46, 48). Supervision and regulation also promote confidence in the buying public that the goods are not stolen, and deter theft crimes by making it more difficult for thieves to monetize stolen property.

Furthermore, the challenged statutory and regulatory scheme qualifies as "pervasive" and "includ[es] detailed standards in such matters as, for example, the operation of the business" (79 NY2d at 499). The business of pawnbrokers has been subject to thorough regulation for over a century, under which they have been required to create, maintain, and make available for inspection, records of their transactions. The regulation of this industry serves several purposes, including deterring theft crimes by making it more difficult for stolen property to be monetized and protecting customers who pledge goods as collateral for short-term loans by ensuring that they are charged lawful interest rates and that the goods are held for the statutory period.

The rules promulgated by the NYPD to implement Local Law 149 of 2013 (38 RCNY 21-01) and the DCA's "Inspection Checklist: Pawnbrokers," are properly "designed to guarantee the certainty and regularity of application" so as "to provide either a meaningful limitation on the otherwise unlimited discretion the statute affords or a satisfactory means to minimize the risk of arbitrary and/or abusive enforcement" (*People v Quackenbush*, 88 NY2d at 541-542 [internal quotation marks and ellipsis omitted]).

Finding that plaintiffs failed to establish a likelihood of success on the merits, we reverse the order granting them injunctive relief.

Accordingly, the order of the Supreme Court, Bronx County (Mitchell J. Danziger, J.), entered June 8, 2015, which, insofar as appealed from as limited by the briefs, granted plaintiffs' motion for a preliminary injunction enjoining defendants from enforcing General Business Law § 45, New York City Charter §§ 435 and 436, Local Law No. 149 of 2013 and its amendments to Administrative Code §§ 20-267, 20-273, and 20-277, Rules of City of New York Department of Consumer Affairs (6 RCNY) § 1-16 and Police Department (38 RCNY) §§ 21-03 (a) and (b), 21-04 (a) and (c), 21-07 (a)-(f), and 21-08, and the procedures outlined in a 1998 memorandum by then NYPD Deputy Commissioner of Legal Matters George A. Grasso, and

in NYPD Patrol Guide Procedure No. 214-38, should be reversed, on the law, without costs, and the motion denied.

ANDRIAS, J.P., FEINMAN, GISCHE and KAHN, JJ., concur.

Order, Supreme Court, Bronx County, entered June 8, 2015, reversed, on the law, without costs, and the motion denied.