Collateral Loanbrokers Assn. of N.Y., Inc. v City of New York (2019 NY Slip Op 09354)





Collateral Loanbrokers Assn. of N.Y., Inc. v City of New York


2019 NY Slip Op 09354


Decided on December 26, 2019


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on December 26, 2019

Richter, J.P., Gische, Tom, Gesmer, Moulton, JJ.


10212 303901/14

[*1] Collateral Loanbrokers Association of New York, Inc., et al., Plaintiffs-Respondents,
v
The City of New York, et al., Defendants-Appellants.


Zachary W. Carter, Corporation Counsel, New York (Kathy C. Park of counsel), for appellants.
Kriss, Kriss & Brignola, LLP, Albany (Mark C. Kriss and Paul Solda of counsel), for respondents.



Order, Supreme Court, Bronx County (Mitchell J. Danziger, J.,), entered on or about April 5, 2019, which granted plaintiffs' motion for summary judgment, inter alia, enjoining defendants from enforcing General Business Law § 45, New York City Charter §§ 435 and 436, Local Law No. 149 of 2013 and the resulting amendments to Administrative Code of City of NY §§ 20-267, 20-273, and 20-277, Rules of City of New York Department of Consumer Affairs (6 RCNY) § 1-16 and Police Department (38 RCNY) §§ 21-03(a) and (b), 21-04(a) and (c), 21-07(a)-(f), and 21—08, and the procedures outlined in a 1998 memorandum by then NYPD Deputy Commissioner of Legal Matters George A. Grasso, and in NYPD Patrol Guide Procedure No. 214-38, and denied defendants' motion for summary judgment dismissing the action in its entirety, unanimously modified, on the law, to deny plaintiffs' motion and to grant defendants' motion as to all of the aforementioned statutes, regulations, and procedures, except New York City Charter § 436, and otherwise affirmed, without costs. The Clerk is directed to enter judgment accordingly.
In the underlying action, plaintiffs challenged the aforementioned statutes, regulations and procedures that monitored the business activities of pawnbrokers and second-hand dealers. Plaintiffs asserted that the regulatory scheme violated New York State's Constitutional prohibition against unreasonable searches and seizures by establishing electronic reporting requirements and authorizing on-premises administrative searches by the NYPD and the New York City Department of Consumer Affairs.
In a prior appeal in this action, this Court reversed an order that granted plaintiffs' motion for a preliminary injunction prohibiting enforcement of the statutes, regulations, and procedures at issue here, concluding plaintiffs had not shown a likelihood of success on the merits (see Collateral Loanbrokers Assn. of N.Y., Inc. v City of New York, 148 AD3d 133, 135 [1st Dept 2017], appeal dismissed 29 NY3d 974 [2017])[FN1]. Considering the question now on the merits we hold that all of plaintiffs' claims fail and must be dismissed, except with respect to NY City Charter § 436. Plaintiffs' non-constitutional claims also fail as a matter of law.
NY City Charter § 436 provides, in relevant part:
"The [police] commissioner shall possess powers of inspection over all licensed or unlicensed pawnbrokers . . . [and] dealers in second-hand merchandise . . . within the city; and in connection with the performance of any police duties he [*2]shall have power to examine such persons, their clerks and employees and their books, business premises, and any articles of merchandise in their possession. A refusal or neglect to comply in any respect with the provisions of this section . . . shall be triable by a judge of the criminal court and punishable by not more than thirty days' imprisonment, or by a fine of not more than fifty dollars, or both"
(New York City Charter § 436).
It is important "not to nullify more of a legislature's work than is necessary" (Ayotte v Planned Parenthood of N. New England, 546 US 320, 329 [2006]). Accordingly, we hold that NY City Charter § 436 is facially unconstitutional to the extent that it provides that the commissioner "shall have power to examine such persons, their clerks and employees and their books, business premises, and any articles of merchandise in their possession" (see e.g. Gem Fin. Serv., Inc. v City of New York, (298 F Supp 3d 464, 499 [ED NY 2018]). That portion of NY City Charter § 436 is facially unconstitutional because it is unlimited in scope, and provides "no meaningful limitation on the discretion of the inspecting officers" (id. at 497). NY City Charter § 436 contains no limits on the time, place, and scope of searches of persons or property. It contains no record keeping requirements and it authorizes an immediate arrest for a failure to comply.
Contrary to defendants' argument, NY City Charter § 436 is not merely a general authorizing statute that looks to other sources to articulate and refine specific legal standards for searches. NY City Charter § 436 incorporates no other statute, regulation, or procedure that could cabin the unfettered discretion that NY City Charter § 436 gives to the NYPD. While the City's adherence to its limiting rules and procedures, such as the Grasso memorandum and the Patrol Guide, might render an as-applied challenge unlikely, these rules do not, by themselves correct the facial overbreadth of NY City Charter § 436 (see Gem Fin. Serv. Inc., 298 F Supp 3d at 499).
However, with respect to the reporting requirements contained in the statutory and regulatory scheme, we again conclude that there is little or no expectation of privacy in the reported information, whether in traditional paper or electronic form, and that the requirements at issue, which are imposed on a closely regulated industry, sufficiently describe and limit the information to be provided, and are reasonably related to the regulatory authority of the agency to which the information is provided (see California Bankers Assn. v Shultz, 416 US 21, 67 [1974]).
With respect to the inspection programs, we reiterate that, except for NY City Charter § 436, the statutory and regulatory scheme is unlike the unconstitutional scheme in People v Scott (Keta), 79 NY2d 474 [1992]). The regulatory scheme here was not created solely to uncover evidence of criminality. Rather it serves to enforce the reporting requirements that provide consumer protection. The scheme qualifies as "pervasive," because this industry has been subject to a long tradition of regulation requiring that it create, maintain, and make transactional records available for inspection (see People v Quackenbush, 88 NY2d 534, 541-542 [1996]). The scheme also is properly "designed to guarantee the certainty and regularity of . . . application" so as "to provide either a meaningful limitation on the otherwise unlimited discretion the statute affords or a satisfactory means to minimize the risk of arbitrary and/or abusive enforcement" (id. at 542 [internal quotation marks and citation omitted]).
City of Los Angeles, Calif. v Patel (_ US _, 135 S Ct 2443 [2015]) does not compel a different result. The challenged municipal ordinance stated, in relevant part, that hotel guest records "shall be made available to any officer of the Los Angeles Police Department for inspection," and provided that "[w]henever possible, the inspection shall be conducted at a time and in a manner that minimizes any interference with the operation of the business" (id. at 2448). Thus, the ordinance failed to provide either a minimum number of inspections or inspections on a "regular basis" (id. at 2456). The ordinance further authorized the immediate arrest of a hotel owner if the owner failed to make guest records available for police inspection (id. at 2452). The United States Supreme Court held that the ordinance was facially unconstitutional under the [*3]Fourth Amendment because it "fail[ed] to provide hotel operators with an opportunity for precompliance review" (id. at 2451-2452).
As plaintiffs concede, City of Los Angeles, Calif. v Patel involved the hotel industry, which unlike the industry here, is not closely regulated. To be sure, the United States Supreme Court reasoned that even if the hotels were pervasively regulated, the ordinance failed the second and third prong of the test articulated by the United States Supreme Court in New York v Burger (id. at 2456). However, apart from NY City Charter § 436, the robust statutory and regulatory scheme here that governs, among other things, on-premises administrative inspections, would satisfy the Burger standards (see New York v Burger, 482 US 691 [1987]).
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: DECEMBER 26, 2019
CLERK



Footnotes

Footnote 1:Even if there is wording in our prior decision that could be read as deciding the constitutional issue on the merits, we believe that a different result is warranted here (see Gem Fin. Serv., Inc. v City of New York, infra).