OPINION OF THE COURT
 

 Titone, J.
 

 Defendant has been charged with the offense of operating a motor vehicle with inadequate brakes (Vehicle and Traffic Law § 375 [1]). He seeks to suppress evidence of the defective condition of his brakes which was obtained by police when his vehicle was impounded and inspected after being involved in a fatal accident. Defendant claims that the police lacked the authority to impound his vehicle and that the warrantless inspection of his brakes that yielded evidence of their defective condition constituted an illegal search and seizure in violation of the 4th and 14th Amendments to the United States Constitution and article I, § 12 of the New York State Constitution. We conclude that the police possessed the authority to impound the vehicle in order to comply with the investigatory and reporting duties imposed by Vehicle and Traffic Law § 603. We also hold that the warrantless inspection, which was limited to the vehicle’s safety equipment that is normally subject to extensive government regulation and which was related in scope to the duty to investigate the facts surrounding an accident involving a death, did not offend the constitutional prohibitions against unreasonable searches and seizures.
 

 I.
 

 Defendant’s vehicle was involved in a fatal accident with a bicyclist on August 23, 1993. At the accident scene, defendant was informed that the police were impounding the vehicle for a safety inspection. A mechanic employed by the Town of East Hampton inspected the vehicle on August 25, 1995 and completed a standard form Motor Vehicle Examination Report, in which he was asked to report, in a sworn statement, the condition of the following equipment on defendant’s vehicle: the horn, windshield, wipers, brake pedal, headlights, tires, brakes, and steering. Significantly, the mechanic stated that he found "metal to metal contact” on the right rear brakes. Defendant was charged with the misdemeanor of operating a motor vehicle with inadequate brakes in violation of Vehicle
 
 *538
 
 and Traffic Law § 375 (1) based on the results of that safety inspection.
 
 [1]
 

 Defendant moved to suppress the evidence on the ground that the Vehicle and Traffic Law does not explicitly authorize the police to impound a vehicle to conduct a safety inspection after an accident involving personal injury. Defendant also claimed that the inspection of the vehicle without a warrant, probable cause or exigent circumstances constituted an illegal search in violation of the 4th and 14th Amendments to the United States Constitution and of article I, § 12 of the New York State Constitution.
 

 At a
 
 Mapp
 
 hearing, Detective Reich testified that the damage to the vehicle and defendant’s admission that he had collided with the bicycle led him to conclude that defendant’s vehicle was the instrumentality that caused the victim’s death and that the car should be impounded and held for an inspection to enable the police to comply with their accident investigating duties and reporting obligations dictated by Vehicle and Traffic Law § 603. Detective Reich testified that the impoundment was also necessary to avoid the potential destruction of evidence, given that defendant was known to be a mechanic, and that police department policy required impoundment in all automobile accidents that resulted in serious physical injury or death.
 

 Justice Court suppressed the evidence obtained as a result of the safety inspection. The court held that evidence obtained pursuant to the investigation and reporting responsibility mandated by Vehicle and Traffic Law § 603 — an "administrative inspection” — could not be utilized for purposes of a criminal prosecution. The court also ruled that the police failure to fully inform the defendant of his right to withhold his consent to the inspection effectively eradicated an otherwise valid consent and that the "exigent circumstances” exception to the warrant requirement could not be asserted after the impoundment of the vehicle. Finally, the court held that the car could not be seized based on a threshold probable cause showing because the police did not have reasonable cause to believe that defendant had committed a crime at the time of the accident.
 

 On the People’s appeal, a divided Appellate Term reversed the order granting the motion to suppress and denied the mo
 
 *539
 
 tian. The court ruled that the impoundment and inspection of the vehicle was properly performed pursuant to the mandates of Vehicle and Traffic Law § 603, that the examination of the brakes was not a "search” within the meaning of the 4th Amendment, and that defendant had consented to the impoundment and inspection of his vehicle. The court further concluded that defendant had not met his burden of proving that he had a legitimate expectation of privacy in the vehicle, especially where a death had resulted. Under such circumstances, the majority concluded that "it could be readily understood why a 'safety inspection’ looking for anything that might constitute a malfunction on any part of the pickup truck was mandatory * * * to avoid the possibility of a repetition thereof.”
 

 One Justice dissented on the ground that the safety inspection and examination of defendant’s brakes was a "search” of a "hidden area” of a motor vehicle in which defendant enjoyed a reasonable expectation of privacy under the New York State Constitution. Thus, the dissent concluded that the warrantless search of the brakes was unjustified. A Judge of this Court granted defendant’s application for leave to appeal, and we now affirm.
 

 II.
 

 The initial question for this Court is whether the police had the authority to impound defendant’s vehicle for a safety inspection after it was involved in the fatal accident. We conclude that Vehicle and Traffic Law § 603 implicitly grants the police the authority to impound vehicles for a safety inspection in order to fulfill their investigatory and reporting duties under the statute.
 

 Vehicle and Traffic Law § 603 requires that whenever an accident resulting in injury to a person has been reported to the police within five days of its occurrence, the police "shall immediately investigate the facts, or cause the same to be investigated, and report the matter to the commissioner [of Motor Vehicles] forthwith” (Vehicle and Traffic Law § 603 [1]) on a form prepared by the Commissioner
 
 (id.,
 
 § 604). The information transmitted from the police to the Commissioner must include, among other data, a description of the accident, the damage to the vehicles and their undercarriages, and a report on whether the vehicle operators were ticketed, arrested or charged with any violations
 
 (see,
 
 Department of Motor Vehicles
 
 *540
 
 Form MV-104A).
 
 [2]
 
 The officer’s determination of whether the vehicle was suffering from a safety defect at the time of the accident has obvious relevance in preparing the accident description and in reporting whether violations were issued to drivers of vehicles involved.
 
 [3]
 
 The police reports are designed to serve several administrative functions, such as aiding the Commissioner of Motor Vehicles in promulgating regulations to enhance the safety of our roads
 
 (see,
 
 L 1973, ch 634, Bill Jacket, Mem of Chairman of Committee on Transportation, dated May 27, 1973), and assisting in the prompt resolution of personal injury and property damage claims against automobile owners and insurers arising from automobile collisions
 
 (see,
 
 Bill Jacket, L 1969, ch 517).
 

 Section 603 does not expressly authorize the police to remove the vehicle from the accident scene and impound it in order to complete the requisite investigation and report. However, that legislation "impose[s] a duty of investigation” (Bill Jacket, L 1969, ch 517, Mem of Motor Vehicle Commissioner Tofany to Governor’s Counsel, dated May 5, 1969), and in turn, a proper investigation may require an inspection of the mechanical areas of the vehicle. As a practical matter, an inspection of a vehicle to determine whether any defects in its safety equipment constituted a contributing cause of the accident cannot reasonably be undertaken on the roadway where licensed mechanics and proper facilities and equipment are unavailable. Thus, we conclude that section 603 implicitly grants the police the authority to impound a vehicle in furtherance of their administrative mandate to fully investigate the cause of a fatal automobile accident, as well as to ensure the safety of those conducting the accident investigation
 
 (see, South Dakota v Opperman,
 
 428 US 364, 368-369).
 

 Having concluded that the police had implicit authority to impound the vehicle for a safety inspection, we turn our attention to a determination of whether the impoundment and inspection procedure, undertaken without the issuance of a
 
 *541
 
 warrant, violated the constitutional proscriptions against unreasonable searches and seizures (see, US Const 4th Amend; NY Const, art I, § 12). We agree with defendant that any exigency normally associated with the mobility of a vehicle (see,
 
 e.g., People v Belton,
 
 55 NY2d 49, 54) was removed by its impoundment and thus could not justify the warrantless intrusion. Nonetheless, we conclude that the warrantless inspection was justified by other factors providing assurances that the initiation and scope of the search were reasonable.
 

 The 4th Amendment of the United States Constitution and article I, § 12 of our State Constitution protect individuals " 'from unreasonable government intrusions into their legitimate expectations of privacy’ ”
 
 (People v Class,
 
 63 NY2d 491, 494, quoting
 
 United States v Chadwick,
 
 433 US 1, 7). In determining whether a seizure and search is unreasonable, we must be satisfied that the governmental intrusion "was justified at its inception” and "was reasonably related in scope to the circumstances which justified the interference in the first place”
 
 (Terry v Ohio,
 
 392 US 1, 20).
 

 The requirement that the police, "whenever practicable, obtain advance judicial approval of searches and seizures through the warrant procedure”
 
 (Terry v Ohio,
 
 392 US 1, 20,
 
 supra)
 
 serves to ensure that a determination of the reasonableness of the search results from a neutral balancing of the need for the intrusion on the one hand and the severity of the invasion on an individual’s legitimate expectation of privacy on the other
 
 (id.,
 
 at 19). The warrant requirement, traditionally applied "to searches undertaken to procure evidence of criminality”
 
 (People v Scott,
 
 79 NY2d 474, 493) also extends to searches of private property undertaken by State agents in the furtherance of administrative or regulatory schemes
 
 (id.; see also, Michigan v Tyler,
 
 436 US 499, 505).
 

 Warrantless administrative searches may be upheld in the limited category of cases where the activity or premises sought to be inspected is subject to a long tradition of pervasive government regulation and the regulatory statute authorizing the search prescribes specific rules to govern the manner in which the search is conducted
 
 (People v Scott,
 
 79 NY2d 474, 499,
 
 supra).
 
 As a practical matter, a person involved in a closely regulated business or activity generally has a diminished expectation of privacy in the conduct of that business because of the degree of governmental regulation. Because of the minimal expectation of privacy in a closely regulated business, warrantless searches of such conduct are considered "more
 
 *542
 
 necessary and less intrusive than such inspections would be if conducted on less heavily regulated businesses” (2 Ringel, Searches & Seizures, Arrests and Confessions, at 14-20 [2d ed]).
 

 "Pervasive regulation” will only be found where the operations of an industry or activity are regulated by detailed governmental standards
 
 (People v Scott,
 
 79 NY2d, at 499,
 
 supra).
 
 The requisite close regulation will not be found where governmental regulations impose "relatively nonintrusive obligations” on businesses or activities, such as the requirements that participants pay fees, register or report to governmental agencies
 
 (id.).
 

 The additional requirement that the administrative search of a pervasively regulated activity be governed by specific rules designed "to guarantee the 'certainty and regularity of * * * application’ ”
 
 (id.,
 
 at 499) serves to "provide either a meaningful limitation on the otherwise unlimited discretion the statute affords or a satisfactory means to minimize the risk of arbitrary and/or abusive enforcement”
 
 (id.,
 
 at 500). Together, these dual components of the "pervasively regulated business” exception to the administrative warrant requirement constitute "a constitutionally adequate substitute for a warrant”
 
 (id.,
 
 at 502) because they ensure that there is a compelling need for the governmental intrusion and that the search is limited in scope to that necessary to meet the interest that legitimized the search in the first place
 
 (Terry v Ohio,
 
 392 US, at 19,
 
 supra; see also, Michigan v Tyler,
 
 436 US, at 507,
 
 supra).
 

 III.
 

 The justifications for dispensing with the warrant requirements in closely regulated businesses provide a useful analytical framework for our resolution of this case. The inspection scheme at issue heré, designed to further the compelling safety interest of the government in regulating the use of motor vehicles on the State’s public highways
 
 (People v Ingle,
 
 36 NY2d 413, 419), provides similar assurances that the inspection will be reasonable. The mechanical areas of automobiles are subject to extensive and long-standing safety regulation analogous to that which has served to except pervasively regulated businesses from the administrative warrant requirement. New York drivers must subject their vehicles to annual inspections of their safety equipment by licensed mechanics before being granted the privilege of driving on our roadways
 
 (see,
 
 Vehicle and Traffic Law § 301; 15 NYCRR part 79).
 

 Because of this extensive regulation of vehicular safety equipment, there is only a diminished expectation of privacy
 
 *543
 
 in the mechanical areas of a vehicle.
 
 [4]
 
 When a fatal accident involving an automobile has occurred, that minimal privacy expectation necessarily yields to the State’s legitimate public safety interests in determining all of the circumstances surrounding the death and the cause of the accident
 
 (People v Ingle,
 
 36 NY2d 413, supra) and in ensuring that the vehicle is not returned to the roadway in an unsafe condition. As one jurisdiction has noted in reaching a similar conclusion, "[s]ociety places great importance on learning all the circumstances of any motor vehicle accident resulting in death”, and would not "recognize as objectively reasonable an expectation of privacy in the braking mechanism of a motor vehicle that had come into police possession following the death of a motorist on the highway”
 
 (Commonwealth v Mamacos,
 
 409 Mass 635, 640, 568 NE2d 1139, 1142).
 

 The rules governing the inspection at issue here also comport with 4th Amendment principles because they remove the possibility that the inspection will be undertaken in an arbitrary manner.
 
 [5]
 
 The safety inspection authorized by Vehicle and Traffic Law § 603 is only conducted in response to a particular event — an automobile accident resulting in personal injury or
 
 *544
 
 death — that calls into question the safe mechanical functioning of the vehicle. Uncontroverted hearing testimony also established that it is the standard policy of the East Hampton Police Department to uniformly conduct this mechanical inspection on every vehicle involved in an accident resulting in either serious physical injury or death. Thus, vehicles are not randomly or arbitrarily selected from the flow of traffic for enforcement of the inspection scheme at issue here (cf.,
 
 People v Ingle,
 
 36 NY2d 413,
 
 supra; People v Miller,
 
 52 AD2d 425, 431,
 
 affd
 
 43 NY2d 789).
 

 The scope of the intrusion was also strictly tailored to a determination of whether any safety violations existing on the vehicle at the time of the accident could have contributed to its cause — the initial justification for the intrusion. This safety inspection, which included an examination of the brakes, wipers, windshield, and headlights was less extensive than that required to be conducted annually on all cars in this State
 
 (see,
 
 Vehicle and Traffic Law § 301; 15 NYCRR 79.3). The police and licensed mechanics are accorded no discretion in selecting the areas subject to examination and the mechanics must examine the vehicle according to standard protocol. The inspection is limited to mechanical parts of the vehicle and does not extend to the private areas of the car where personal effects would be expected to be contained and to which "different and more stringent rules apply”
 
 (People v Ingle,
 
 36 NY2d 413, 421,
 
 supra; see also, People v Class,
 
 63 NY2d 491, 495,
 
 supra).
 

 The fact that the length of the intrusion here — a two-day impoundment — is greater than the temporary detainment of automobiles normally associated with a stop for a routine traffic check
 
 (see,
 
 Vehicle and Traffic Law § 390;
 
 People v Ingle,
 
 36 NY2d 413,
 
 supra)
 
 does not change the result. The immediate and more extended seizure of the vehicle without a warrant in this case was justified to ensure that the police report to the Commissioner accurately reflected the condition of the safety equipment on the vehicle at the time of the accident. Indeed, the officers at the scene would have been remiss in their duties had they prematurely released the vehicle to defendant, an auto mechanic, prior to a full determination of the cause of the accident. The impoundment served to secure the accident condition of the vehicle from changes due to subsequent road use or even intentional tampering. Given that the police must
 
 *545
 
 employ licensed mechanics to conduct the safety inspection on the vehicle, the two-day delay in conducting the inspection— which for safety and reliability reasons could not be conducted at the scene — was not unreasonable as a matter of law.
 

 On these facts, we are satisfied that the inspection of the braking mechanism on defendant’s vehicle after its involvement in a fatal collision did not constitute an unreasonable search in the constitutional sense. Given our conclusion that this search was reasonable under the 4th Amendment, the evidence obtained through that inspection was properly held admissible by Appellate Term in this criminal prosecution
 
 (People v Scott,
 
 79 NY2d, at 502, n 5,
 
 supra).
 

 Accordingly, the order of Appellate Term should be affirmed.
 

 Chief Judge Kaye and Judges Simons, Bellacosa, Smith, Levine and Ciparick concur.
 

 Order affirmed.
 

 [1]
 

 . Defendant was not charged with any oifense in connection with the bicyclist’s death.
 

 [2]
 

 . The following safety violations are delineated in the Vehicle and Traffic Law: bad brakes (Vehicle and Traffic Law § 375 [1]); unsafe tires (§ 375 [35] [c]); cracked or obstructed windshield (§ 375 [30]); inadequate muffler (§ 375 [31]) and improper headlights (§ 375 [2]).
 

 [3]
 

 . A 1993 statistical report prepared by the Department of Motor Vehicles contained in the respondent’s appendix indicates that information on the "apparent accident contributing factors” is compiled solely from State-wide police reports submitted to the Commissioner and that "defective brakes” is one among a number of mechanical defects on a vehicle that may be listed on a police accident report as a contributing cause of the accident.
 

 [4]
 

 . Although constitutional protections against unreasonable government intrusions extend to searches of automobiles and seizures of their contents
 
 (People v Class, supra; Terry v Ohio, supra),
 
 there is generally "only a diminished expectation of privacy in an automobile”
 
 (People v Scott,
 
 63 NY2d 518, 525, citing
 
 United States v Martinez-Fuerte,
 
 428 US 543, 561). Drawing on precedent of the United States Supreme Court, this Court has explained that the reduced expectation of privacy in a vehicle is occasioned by the facts that "automobiles 'operate on public streets; * * * are serviced in public places; * * * their interiors are highly visible and they are subject to extensive regulation and inspection’ ”
 
 (People v Belton,
 
 55 NY2d 49, 53, quoting
 
 Rakas v Illinois,
 
 439 US 128, 154).
 

 [5]
 

 . In
 
 People v Ingle
 
 (36 NY2d 413,
 
 supra),
 
 this Court discussed the reasonableness of "routine safety checks” undertaken by the State Police pursuant to Vehicle and Traffic Law § 390 in which the police temporarily detained vehicles to determine whether they were "being operated in compliance with the Vehicle and Traffic Law”
 
 (id.,
 
 at 415). The Court explained that the reasonableness of the stop must be measured by a balancing of the State’s "vital and compelling interest in safety on the public highways” against the motorist’s "general right to be free from arbitrary State intrusion on his freedom of movement even in an automobile”
 
 (id.,
 
 at 419). Noting that such stops are "limited seizure[s] within the meaning of constitutional limitations”
 
 (id.,
 
 at 419), the Court explained that the police must have "some valid reason, however slight” to single out a particular vehicle for an inspection to determine whether any equipment violations are present”
 
 (id.,
 
 at 416). While the Court determined that random traffic checks on the highways are also permissible, the Court concluded that those stops must be undertaken by "some system or uniform procedure, and not gratuitously or by
 
 *544
 
 individually discriminatory selection”
 
 (id.)
 
 to be reasonable in the constitutional sense.