Matter of White v State of N.Y. Tax Appeals Trib. (2021 NY Slip Op 04394)





Matter of White v State of N.Y. Tax Appeals Trib.


2021 NY Slip Op 04394


Decided on July 15, 2021


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered:July 15, 2021

530088
[*1]In the Matter of Eric R. White, Doing Business as ERW Wholesale, Petitioner,
v
State of New York Tax Appeals Tribunal et al., Respondents.

Calendar Date:May 26, 2021

Before:Egan Jr., J.P., Aarons, Pritzker, Reynolds Fitzgerald and Colangelo, JJ.

Lipsitz Green Scime Cambria LLP, Buffalo (Paul J. Cambria Jr. of counsel), for petitioner.
Letitia James, Attorney General, Albany (Robert M. Goldfarb of counsel), for Commissioner of Taxation and Finance, respondent.



Reynolds Fitzgerald, J.
Proceeding pursuant to CPLR article 78 (initiated in this Court pursuant to Tax Law § 2016) to review a determination of respondent Tax Appeals Tribunal sustaining a penalty imposed under Tax Law article 20.
Petitioner is a member of the Seneca Nation of Indians, a Native American tribe recognized by the US Bureau of Indian Affairs. ERW Wholesale is petitioner's tobacco wholesale business, licensed by the Seneca Nation of Indians operating on the Cattaraugus Reservation. In December 2012, ERW sold 150 cases (9,000 cartons) of Native American brand cigarettes to Oien'Kwa Trading, a Native American-owned business located on the St. Regis Mohawk Reservation. Oien'Kwa Trading immediately sold the cigarettes to Saihwahenteh, a Native American-owned business located on the Ganienkeh territory. Oien'Kwa Trading hired ERW to deliver the cigarettes directly to Saihwahenteh. Sean Snyder, an ERW employee, was employed as the truck driver.
While en route, Snyder failed to stop at a commercial vehicle inspection checkpoint and, as a result, he was pulled over by a state trooper. The trooper asked Snyder for the vehicle registration and asked him what he was transporting. Snyder told him his cargo consisted of cigarettes that were being taken from one Native American territory to another and produced an envelope of documents containing, among other things, the vehicle registration card, insurance card, invoices, bill of lading and ERW's Seneca Nation of Indians business license. Eventually the trooper was joined by another trooper and they escorted Snyder back to the inspection checkpoint for the truck to be inspected. Snyder was immediately issued a ticket for disobeying a traffic control device, and then a trooper began a commercial vehicle enforcement or safety inspection of the truck. The inspection lasted approximately 40 minutes, whereupon a vehicle examination report was issued citing two safety violations. However, rather than releasing Snyder and his vehicle at the end of the inspection, a State Police investigator continued to detain him and search the truck. The investigator asked Snyder for the key to unlock the cargo area and, when Snyder did not promptly locate same, a trooper utilized bolt cutters to remove the padlock, and the investigator proceeded to search the interior of the cargo area. There he discovered the cargo to be as Snyder had described — cases containing cartons of cigarettes. Rather than end the search at that point, the investigator then removed a carton from one of the cases, opened it, pulled out and examined an individual pack of cigarettes, and found that it did not have a tax stamp. After some discussion with his superior officer, the investigator confiscated the cigarettes, and Snyder was permitted to leave with the empty truck.
In December 2014, the Department of Taxation and Finance issued a notice of determination to petitioner stating that he owed a $1,259,250 penalty pursuant to Tax Law article 20 [*2]for "possession of unstamped or unlawfully stamped cigarettes."[FN1] In September 2015, petitioner filed a petition challenging the penalty against him. Following a hearing, an Administrative Law Judge sustained the penalty, finding that it was lawfully imposed and merited as ERW's conduct was a violation of the Tax Law. Upon petitioner filing a notice of exception to this determination, respondent Tax Appeals Tribunal affirmed the determination as to petitioner and sustained the penalty. Petitioner then commenced this CPLR article 78 proceeding in this Court challenging the Tribunal's determination.
In a proceeding such as this, this Court's scope of review is limited to whether the Tribunal's determination "has a rational basis and is supported by substantial evidence" (Matter of HDV Manhattan, LLC v Tax Appeals Trib. of the State of N.Y., 156 AD3d 963, 965 [2017]; see Matter of Jay's Distribs., Inc. v Boone, 148 AD3d 1237, 1237 [2017], lv denied 29 NY3d 918 [2017]). Petitioner contends that the Tribunal's decision is not supported by substantial evidence, as the only evidence sustaining the penalty — the unstamped cigarettes — was obtained by an unlawful search in violation of petitioner's Fourth Amendment rights.[FN2] We agree.
"It is well settled that a business[person's] private commercial property is entitled to Fourth Amendment protections" (People v Spinelli, 35 NY2d 77, 80 [1974] [citation omitted]). "State agencies, charged with purely administrative responsibilities, just as those engaged in the enforcement of the criminal law, must conduct their investigative and enforcement functions in compliance with constitutional requirements and, more particularly, within the confines of the Fourth Amendment" (Matter of Finn's Liq. Shop v State Liq. Auth., 24 NY2d 647, 654 [1969] [citations omitted], cert denied 396 US 840 [1969]). When the state's agents exceed those limits, "it should not be permitted to avail itself of the fruits of such unlawful activity in order to impose sanctions upon the persons whose constitutional rights have been violated" (id. at 655).
It is undisputed that the seized cigarettes at the heart of this matter were the product a warrantless search. "[W]arrantless searches and seizures are per se unreasonable unless they fall within one of the acknowledged exceptions to the Fourth Amendment's warrant requirement" (People v Diaz, 81 NY2d 106, 109 [1993], abrogated on other grounds Minnesota v Dickerson, 508 US 366 [1993]). "Where a warrant has not been obtained, it is the [agency that] ha[s] the burden of overcoming th[e] presumption" of unreasonableness (People v Hodge, 44 NY2d 553, 557 [1978]). Respondent Commissioner of Taxation and Finance (hereinafter Commissioner) argues that the search at issue here falls under two exceptions to the rule, namely, the automobile exception and the administrative search exception. Under the automobile exception, police may search a vehicle without a warrant "when they have arrested [*3]one of its occupants and there is probable cause to believe that the vehicle contains contraband [or] evidence of the crime" (People v Thompson, 106 AD3d 1134, 1135 [2013] [internal quotation marks and citations omitted]; see People v Galak, 81 NY2d 463, 466-467 [1993]). Thus, the validity of a search is subject to a two-prong test — arrest and probable cause — neither of which is satisfied here. As to the first prong, the record reveals that Snyder, the driver and sole occupant of the truck that was searched, was never arrested. With respect to probable cause, the record demonstrates a complete lack thereof. When Snyder was stopped, he was completely cooperative with the trooper and forthrightly explained that he was transporting cigarettes from a Native American reservation to a Native American territory, and he immediately gave the trooper an envelope containing the pertinent documents, namely the registration, invoices and bill of lading. Although the trooper testified that Snyder appeared nervous when he was initially pulled over, this conduct in and of itself is insufficient to justify a search (see People v Hackett, 47 AD3d 1122, 1124 [2008]). Once back at the vehicle inspection checkpoint, Snyder readily exited his vehicle and turned his keys over to the trooper; he was never asked if the cigarettes were stamped. When the trooper employed the bolt cutters and the investigator entered the cargo area, the investigator found that the cargo was exactly as Snyder had told them — cases of cigarettes. The investigator's search of the cargo area, including opening a case and then a carton, in order to inspect a single pack of cigarettes for a tax stamp was not precipitated by a complaint, tip, investigation or statements from Snyder, any of which might have provided probable cause. On the contrary, the investigator testified that the search proceeded only after he conferred with the trooper who believed that the cigarettes were Native American brand and, as such, were not stamped. The transportation of cigarettes from a Native American reservation to a Native American territory does not, in and of itself, give rise to a reasonable inference of criminality (see People v Jock, 40 Misc 3d 457, 462-463 [St. Lawrence County Ct 2013]).
Likewise, the safety inspection did not justify the warrantless search. "[P]olice officers are authorized to enter upon and perform inspections of motor vehicles . . . to ascertain whether the rules and regulations of the [C]ommissioner [of Transportation] are being obeyed and . . . whether such vehicles are maintained, equipped and operated in accordance with . . . regulations" (17 NYCRR 820.12 [a]). The primary purpose of the inspection checkpoint is to determine whether the vehicle is safe. The inspection of the truck occurred immediately upon Snyder entering the designated safety checkpoint area and was completed in approximately 40 minutes. However, Snyder was further detained an additional three hours[*4]. The investigator's testimony confirmed that the safety inspection was complete before the search of the cargo area commenced. Thus, the search was not performed under the pretext of the safety inspection and did not comply with constitutional standards (see People v White, 8 Misc 3d 935, 949 [St. Lawrence County Ct 2005]; People v Reyes, 154 Misc 2d 476, 480 [Crim Ct, Bronx County 1993]).
Lastly, the warrantless search was not permitted under the Tax Law. "[T]he [C]ommissioner . . . is hereby authorized to examine the books, papers, invoices and other records of any person in possession, control or occupancy of any premises where cigarettes or tobacco products are placed, stored, sold or offered for sale, and the equipment of any such person pertaining to the stamping of cigarettes or the sale and delivery of cigarettes or tobacco products taxable under [Tax Law article 20], as well as the stock of cigarettes or tobacco products in any such premises or vehicle" (Tax Law § 474 [4]). The search of the truck was not conducted by the Commissioner; instead, the search was conducted by the State Police. The record does not disclose that the State Police was acting as an agent or under the direction of the Commissioner. Even assuming arguendo that the State Police was acting as an agent of the Commissioner, a search of the truck could not occur on the mere suspicion that the cigarettes were unstamped. Agents must have information sufficient to form a reasonable belief that unstamped cigarettes were being transported before they could conduct a search of the truck. Here, no such information existed. "Absent a quantum of belief sufficient to constitute probable cause[,] they may not enter and inspect" (People v Rizzo, 40 NY2d 425, 430 [1976]). Additionally, the search must proceed in a nonforcible manner. "[A]n administrative inspector can demand entry into locked areas which [the inspector] reasonably believes contain regulated activity. This does not mean that [the inspector] has the authority to break and enter" (People v Sciacca, 45 NY2d 122, 128 [1978] [internal citation omitted]). Thus, we find that the search violated petitioner's Fourth Amendment rights and evidence of the unstamped cigarettes must be excluded.
In affirming the Administrative Law Judge's decision, the Tribunal declined to rule on the unlawful search issue, finding that even if the direct evidence (the cigarettes themselves) were excluded, other evidence in the record, specifically, the truck's failure to stop at the inspection checkpoint and the cigarette invoices, provided a rational basis to conclude that the cigarettes were unstamped. We disagree. As to the former, although the initial stop of the truck was valid, the record reveals that nothing subsequent thereto provided the state trooper with a "founded suspicion that criminal activity is afoot" (People v De Bour, 40 NY2d 210, 223 [1976]). Regarding the invoices, the information thereon merely indicates that [*5]the cigarettes are exempt from sales tax. The penalty imposed here, pursuant to Tax Law article 20, is an excise tax and the sales tax reference is irrelevant to whether the cigarettes are stamped. Absent the direct evidence of the cigarettes, the Tribunal's finding that circumstantial evidence alone supports the imposition of the penalty is irrational and is not supported by substantial evidence (see Matter of Meredith Corp. v Tax Appeals Trib. of the Dept. of Taxation & Fin. of the State of N.Y., 102 AD3d 156, 161 [2012]; Matter of Goldner v State Tax Commn., 60 AD2d 103, 105 [1977]).
Although the Commissioner asserts that petitioner did not provide evidence contrary to the assessment, this argument is both without merit and circular. Once it has been established that the search is illegal, it must be determined whether the evidence should be suppressed. The question becomes whether the evidence was based on the "exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint" (Hudson v Michigan, 547 US 586, 592 [2006] [internal quotation marks and citations omitted]). Here, the evidence must be suppressed. The assessment is based on evidence of the unstamped cigarettes, which was obtained directly from the exploitation of the illegal search and is tainted evidence. Without evidence of the unstamped cigarettes, there is no foundation for the assessment and, therefore, the assessment cannot stand. Petitioner's remaining contentions have been rendered academic by our determination.
Egan Jr., J.P., Aarons, Pritzker and Colangelo, JJ., concur.
ADJUDGED that the determination is annulled, without costs, and petition granted.



Footnotes

Footnote 1: Identical penalties were also imposed against ERW Enterprises, the registered owner of the truck, and Snyder, individually. As part of the determination under review, respondent Tax Appeals Tribunal dismissed the penalty against ERW Enterprises, and the penalty against Snyder was canceled by the Division of Tax Appeals (see Matter of Shawn E. Snyder, 2017 WL 2854875 *13, 2017 NY Tax LEXIS 120, *38-39 [NY St Div of Tax Appeals DTA No. 825785, June 22, 2017]).

Footnote 2: Although the proper procedure to be followed would have been for petitioner to make a motion to suppress the evidence, respondent Commissioner of Taxation and Finance did not object to petitioner filing his petition challenging the penalty based on the unlawful search and "it must be said that [the Commissioner] acquiesced in the procedures employed in this case" (Monserrate v Upper Ct. St. Book Store, 49 NY2d 306, 310 [1980]).