Matter of Owner Operator Ind. Drivers Assn., Inc. v New York State Dept. of Transp. (2022 NY Slip Op 02166)





Matter of Owner Operator Ind. Drivers Assn., Inc. v New York State Dept. of Transp.


2022 NY Slip Op 02166


Decided on March 31, 2022


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered:March 31, 2022

531495

[*1]In the Matter of Owner Operator Independent Drivers Association, Inc., et al., Appellants,
v
New York State Department of Transportation et al., Respondents.

Calendar Date:February 17, 2022

Before: Garry, P.J., Lynch, Pritzker, Colangelo and McShan, JJ.


Tabner, Ryan & Keniry, LLP, Albany (Charles R. Stinson of The Cullen Law Firm, PLLC, Washington, DC, of counsel, admitted pro hac vice), for appellants.
Letitia James, Attorney General, Albany (Kevin C. Hu of counsel), for respondents.


McShan, J.
Appeal from a judgment of the Supreme Court (Cholakis, J.), entered May 7, 2020 in Albany County, which, in a combined proceeding pursuant to CPLR article 78 and action for declaratory judgment, granted respondents' motion to dismiss the petition/complaint.
The Federal Motor Carrier Safety Administration (hereinafter FMCSA) establishes and enforces federal safety standards for commercial motor vehicles (hereinafter CMVs) and their operators. To encourage state cooperation in the enforcement of those federal regulations, the FMCSA provides grant funding to states that adopt the regulations into state law and assist in their enforcement (see 49 USC § 31102; 49 CFR 350.101, 350.209, 350.211). New York is a participant in the grant program and incorporates the required federal regulations into the regulations promulgated by respondent Department of Transportation (hereinafter DOT) (see 17 NYCRR part 820). DOT, assisted by the Department of Motor Vehicles and the State Police, is the agency primarily responsible for enforcing the FMCSA regulations in New York.
Among other safety requirements, the FMCSA and participating states regulate a CMV operator's maximum number of driving service hours (see 49 CFR part 395). To that end, state and federal laws require CMV operators to record their hours of service and duty status, as well as other relevant data, and to produce such records for inspection upon demand by state law enforcement (see 49 USC § 31142 [d]; Transportation Law § 140 [2] [b]; 17 NYCRR 820.12 [a]). Hours of service data and duty status were previously documented on paper records or by automatic on-board recording devices (see 49 CFR former 395.8 [a]). However, in 2012, Congress passed legislation requiring CMVs involved in interstate commerce and operated by drivers subject to the hours of service and record of duty status requirements to install electronic logging devices (hereinafter ELDs) (see 49 USC § 31137 [a]). ELDs integrate with a vehicle's engine and use GPS technology to automatically record the date, time and approximate geographic location of CMVs, as well as the number of engine hours and vehicle mileage (see 49 CFR 395.26 [b]). Drivers are required to manually input identifying information and any changes in their duty status, the categories of which include, among others, on-duty, off-duty and authorized personal use (see 49 CFR 395.24 [b]; 395.26 [b]; 395.28). Upon request, information recorded by ELDs must be made available to law enforcement personnel during roadside safety inspections (see 49 USC § 31137 [b] [1] [B]; 49 CFR 395.24 [d]). The FMCSA promulgated the final rule in 2015, which, subject to certain exceptions, required that ELDs be installed and in use by December 18, 2017 (see 49 CFR 395.8, 395.15, 395.22, 395.24).
Petitioner Owner Operator Independent Drivers Association, Inc. (hereinafter OOIDA), a not-for-profit corporation whose members own and operate CMVs, commenced a proceeding in federal [*2]court challenging the ELD rule on various grounds, including that the warrantless inspection of ELD data constituted an unreasonable search and seizure under the US Constitution. The Seventh Circuit rejected OOIDA's facial challenge to the ELD rule, concluding, insofar as is relevant here, that "the ELD mandate is a reasonable administrative inspection within the meaning of the Fourth Amendment" (Owner-Operator Independent Drivers Assn., Inc. v United State Dept. of Transp., 840 F3d 879, 893 [7th Cir 2016] [internal quotation marks omitted], cert denied ___ US ___, 137 S Ct 2246 [2017]). OOIDA then commenced a class action in Supreme Court alleging that the ELD rule was being enforced prior to its incorporation into state law and asserting that such enforcement violated CMV operators' rights to due process and to be free from unreasonable searches and seizures under the NY Constitution. Supreme Court (Platkin, J.) granted summary judgment dismissing the complaint, finding no evidence of any preadoption enforcement of the ELD rule and concluding that the prohibition against unreasonable searches and seizures is not violated by the roadside inspection of ELDs for the sole purpose of ensuring compliance with preexisting hours of service requirements (Owner Operator Ind. Drivers Assn., Inc. v Calhoun, 62 Misc 3d 909, 921-924 [Sup Ct, Albany County 2018], affd 188 AD3d 1313 [2020]). While OOIDA's appeal from that order and judgment was pending, DOT adopted the ELD rule as an emergency measure (see State Administrative Procedure Act § 202 [6] [a], [d] [ii]). Because the claims asserted by OOIDA in the state action related solely to the alleged preadoption enforcement of the ELD rule, this Court found that the adoption of the rule rendered those issues moot and dismissed the appeal (Owner Operator Ind. Drivers Assn., Inc. v Karas, 188 AD3d 1313, 1316 [2020]).
The ELD rule was finally incorporated into New York law effective April 24, 2019 (see 17 NYCRR 820.6). Petitioners — OOIDA and three current or former CMV operators — thereafter commenced this combined CPLR article 78 proceeding and action for declaratory judgment against DOT and various state officials alleging that the ELD rule, on its face, violates their right to due process and the proscription against unreasonable searches and seizures guaranteed by the NY Constitution. They further asserted that DOT's promulgation of the ELD rule was arbitrary and capricious in that it violated the State Administrative Procedure Act (hereinafter SAPA). Respondents moved to dismiss the petition/complaint for, among other reasons, failure to state a cause of action. Supreme Court (Cholakis, J.) granted the motion and dismissed the petition/complaint. Petitioners appeal.[FN1]
Facial constitutional challenges are "generally disfavored" (People v Stuart, 100 NY2d 412, 422 [2003]; see Overstock.com, Inc. v New York State Dept. of Taxation & Fin., 20 NY3d 586, 593 [2013], cert denied 571 US 1071 [2013]), and [*3]a party mounting such a challenge "must surmount the presumption of constitutionality accorded to legislative enactments by proof beyond a reasonable doubt" (Matter of Moran Towing Corp. v Urbach, 99 NY2d 443, 448 [2003] [internal quotation marks omitted]; see Matter of E.S. v P.D., 8 NY3d 150, 158 [2007]). To prevail on their facial constitutional challenges, petitioners "bear the burden to demonstrate that 'in any degree and in every conceivable application,' the law suffers wholesale constitutional impairment" (Cohen v State of New York, 94 NY2d 1, 8 [1999], quoting McGowan v Burstein, 71 NY2d 729, 733 [1988]; see Overstock.com, Inc. v New York State Dept. of Taxation & Fin., 20 NY3d at 593). Stated differently, petitioners "must establish that no set of circumstances exists under which the [rule] would be valid" (Matter of Moran Towing Corp. v Urbach, 99 NY2d at 448 [internal quotation marks and citation omitted]).
The crux of this appeal is that the ELD rule violates the privacy rights encompassed within article I, § 12 of the NY Constitution.[FN2] That provision of the NY Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures" (NY Const, art I, § 12). Warrantless searches are, as a general rule, per se unreasonable unless they fall within one of the recognized exceptions to the warrant requirement (see People v Sanders, 26 NY3d 773, 776 [2016]; People v Diaz, 81 NY2d 106, 109 [1993], abrogated on other grounds Minnesota v Dickerson, 508 US 366 [1993]; Matter of White v State of N.Y. Tax Appeals Trib., 196 AD3d 927, 929 [2021]). One such exception is the so-called administrative search exception. Warrantless administrative searches may be upheld "where the activity or premises sought to be inspected is subject to a long tradition of pervasive government regulation and the regulatory statute authorizing the search prescribes specific rules to govern the manner in which the search is conducted" (People v Quackenbush, 88 NY2d 534, 541 [1996] [internal citation omitted]). As the Court of Appeals has explained, "a person involved in a closely regulated business or activity generally has a diminished expectation of privacy in the conduct of that business because of the degree of governmental regulation. Because of the minimal expectation of privacy in a closely regulated business, warrantless searches of such conduct are considered more necessary and less intrusive than such inspections would be if conducted on less heavily regulated businesses" (id. at 541-542 [internal quotation marks and citation omitted]; see Donovan v Dewey, 452 US 594, 599 [1981]; Marshall v Barlow's, Inc., 436 US 307, 312-313 [1978]).[FN3] "The additional requirement that the administrative search of a pervasively regulated activity be governed by specific rules designed 'to guarantee the certainty and regularity of . . . application' serves to 'provide either a meaningful limitation [*4]on the otherwise unlimited discretion the statute affords or a satisfactory means to minimize the risk of arbitrary and/or abusive enforcement'" (People v Quackenbush, 88 NY2d at 542, quoting People v Scott, 79 NY2d 474, 499-500 [1994]).
Petitioners here do not challenge the existence of an administrative search exception to the warrant requirement, but argue as a threshold matter that the exception is inapplicable to the search of a person. However, the ELD rule does not require the placement of a tracking device on a driver's person or any of his or her personal belongings; it requires installation of the ELD in the vehicle itself. Indeed, the Court of Appeals has explicitly recognized that the tracking of a vehicle and the tracking of its operator are not, for constitutional purposes, one in the same (see Matter of Cunningham v New York State Dept. of Labor, 21 NY3d 515, 521 [2013]). "People have a greater expectation of privacy in the location of their bodies, and the clothing and accessories that accompany their bodies, than in the location of their cars" (id.). We thus conclude that, so long as its criteria are met, the administrative search exception to the warrant requirement may properly be applied to the inspections authorized by the ELD rule. We now turn to whether those prerequisites have been satisfied here.
Petitioners have conceded that commercial trucking is a pervasively regulated industry, and there can be little dispute on that point. Federal regulation of commercial trucking extends back more than eight decades (see Pub L 255, § 201, 49 Stat 543; Owner-Operator Independent Drivers Assn., Inc. v United State Dept. of Transp., 840 F3d at 885, 894). The regulations applicable to commercial trucking are comprehensive, touching upon nearly every aspect of the industry. Federal regulations govern a wide range of topics, including the hours of service requirements at issue here (see 49 CFR part 395), driver qualifications (see 49 CFR part 391), mandated drug and alcohol testing (see 49 CFR part 382), preservation of records (see 49 CFR part 379), training requirements (see 49 CFR part 380), technical specifications of vehicles (see 49 CFR part 393), inspection, repair and maintenance of vehicles (see 49 CFR part 396), transportation of hazardous materials (see 49 CFR part 397), minimum levels of financial responsibility for motor carriers (see 49 CFR part 387), and much more. Indeed, the meticulous oversight of this industry even extends to such things as the minimum thickness of foam mattresses installed in sleeper cabs (see 49 CFR 393.76 [e] [2] [iii]). As Supreme Court aptly observed, "one would be hard-pressed to find an industry more pervasively regulated than the trucking industry." Thus, like the numerous federal and state courts that have considered the issue,[FN4] we too find that commercial trucking is a pervasively regulated industry pursuant to which an administrative search may be justified.
We further find that [*5]the regulatory scheme at issue here provides adequate assurances that the inspection of ELDs will be reasonable. "[T]he [s]tate has a vital and compelling interest in safety on the public highways" (People v Ingle, 36 NY2d 413, 419 [1975]; see People v Quackenbush, 88 NY2d at 542), and the ELD mandate serves to further that substantial government interest by ensuring compliance with hours of service requirements. The FMCSA has estimated that 755 fatalities and 19,705 injuries occur each year because of "drowsy, tired, or fatigued CMV drivers" (65 Fed Reg 25,540 [May 2, 2000]). The factual findings made by the FMCSA in connection with its rulemaking revealed that the prior system of documenting hours of service through paper records was inadequate due to the widespread and longstanding problem of falsification of such records (see 65 Fed Reg at 25,540, 25,558). During the public listening sessions held prior to enactment of the final rule, drivers stated that motor carriers sometimes pressured them to alter their paper records (see 80 Fed Reg 78,320, 78,323, 78,325 [Dec. 16, 2015]). The paper records are also vulnerable to human error (see 80 Fed Reg at 78,303). In our view, automatic recording and warrantless inspection of those records offer an eminently reasonable means of combatting this problem.
The ELD rule likewise provides the requisite "meaningful limitation" on the discretion of officials performing the inspection so as to ensure "that the search is limited in scope to that necessary to meet the interest that legitimized the search in the first place" (People v Quackenbush, 88 NY2d at 541-542; see People v Scott, 79 NY2d at 499-500). Both the type of information recorded by the ELD and the scope of a search permitted by the rule are narrow. ELDs record only limited data related to the location and movement of the vehicle and the identity and duty status of the driver. Even that data is not so granular as to allow an inspecting officer to pinpoint where a truck is or has been to within less than a half mile (see 49 CFR 395.26 [d] [2]; 49 CFR part 395, Appendix A, § 4.3.1.6 [c]). Significantly, the ELD rule provides specific protections for the privacy of the vehicle's operator. When an operator selects the status of "authorized personal use," the ELD does not record the CMV's engine hours or mileage and the specificity of the vehicle's location is reduced to within an approximately 10-mile radius (see 49 CFR 395.26 [d] [2]; 49 CFR part 395, Appendix A, § 4.7.3).
Moreover, the rule confines the discretion of law enforcement by limiting the inspection to ELD data alone (see 49 CFR 395.24 [d]). Thus, an inspecting officer has no authority to search the driver or other areas of the vehicle "where personal effects would be expected to be contained and to which different and more stringent rules apply" (People v Quackenbush, 88 NY2d at 544 [internal quotation marks and citations omitted]). The scope of the intrusion is also tailored [*6]to a determination of whether there has been compliance with hours of service requirements (see 49 USC § 31137 [e] [3]). Finally, the ELD rule puts drivers and motor carriers on notice of the prospect of the inspection (see 49 CFR 395.22 [j]; 395.24 [d]). Thus, CMV operators are "informed in advance that the inspections to which he or she [may be] subject do not constitute discretionary acts by a government official but are conducted pursuant to [law]" (Matter of Murtaugh v New York State Dept. of Envtl. Conservation, 42 AD3d 986, 989 [2007], lv dismissed 9 NY3d 971 [2007]).
Contrary to petitioners' contentions, the ELD rule is not unconstitutional simply because the results of the authorized search may reveal a violation of the Penal Law. Unlike the unconstitutional scheme at issue in People v Scott (79 NY2d 474 [1992], supra), the inspections authorized by the ELD rule are not "undertaken solely to uncover evidence of criminality" (id. at 498). Rather, the manifest purpose of the examination of ELD data is to enforce the regulatory requirements concerning hours of service, which are predicated upon the safety concerns associated with the operation of CMVs on the state's public roads and highways (see Collateral Loanbrokers Assn. of N.Y., Inc. v City of New York, 178 AD3d 598, 601 [2019], lv dismissed 36 NY3d 933 [2020]). Indeed, no other criminal penalties can flow from the information captured by an ELD (see 49 USC § 31137 [e] [3]). Nor does petitioners' argument that some CMV drivers live in their vehicles alter our analysis of the facial challenge raised here, as petitioners must show that the ELD rule suffers from constitutional impairment "in every conceivable application" (McGowan v Burstein, 71 NY2d at 733; see Matter of Moran Towing Corp. v Urbach, 99 NY2d at 451).
Petitioners' reliance on Matter of Cunningham v New York State Dept. of Labor (21 NY3d 515 [2013], supra) and People v Weaver (12 NY3d 433 [2009]) for their assertion that the warrantless GPS tracking at issue here is per se unconstitutional is misplaced. Weaver held that the attachment of a GPS device to the automobile of a criminal suspect, and the use of that device to track the suspect's movements, is a search within the meaning of article I, § 12 of the NY Constitution (People v Weaver, 12 NY3d at 444-445). Weaver did not hold that GPS tracking was constitutionally prohibited in all circumstances or that the traditional exceptions to the warrant requirement could not apply to a GPS search. The Court of Appeals in fact rejected any such notion in Matter of Cunningham, finding that the GPS search at issue there fell within one of the recognized exceptions to the warrant requirement (Matter of Cunningham v New York State Dept. of Labor, 21 NY3d at 520-521). Although the Court in Matter of Cunningham ultimately ruled that the GPS search under review was unconstitutional, that was so because the 24-hour-a-day, seven-day-per-week surveillance search was found to be [*7]unreasonable in scope (id. at 522-523). That is, the search was "excessively intrusive" insofar as it "examined much activity with which the [s]tate had no legitimate concern — i.e., it tracked [the] petitioner on all evenings, on all weekends and on vacation" (id. at 522). Unlike the continuous GPS tracking at issue in Weaver and Matter in Cunningham, the ELDs record information only at specified times, such as when the vehicle is turned on, when the duty status changes and once per hour while the vehicle is in motion (see 49 CFR 395.26). Perhaps more importantly, the ELDs do not pinpoint a vehicle's exact location while its operator is on duty and substantially reduce the specificity to within an approximately 10-mile radius when the operator is using the vehicle for authorized personal use (see 49 CFR 395.26 [d], [i]). Thus, far from the searches conducted in Weaver and Matter in Cunningham, the narrowly-tailored inspections permitted by the ELD rule are "reasonably related to the objectives of the search and not excessively intrusive in light of the nature of the misconduct" sought to be remedied (O'Connor v Ortega, 480 US 709, 726 [1987]; accord Matter of Cunningham v New York State Dept. of Labor, 21 NY3d at 522).
For these reasons, we are satisfied that the inspections authorized by the ELD rule do not constitute an unreasonable search within the meaning of NY Constitution, article I, § 12 (see People v Quackenbush, 88 NY2d at 545; Collateral Loanbrokers Assn. of N.Y., Inc. v City of New York, 178 AD3d at 601-602; Matter of Murtaugh v New York State Dept. of Envtl. Conservation, 42 AD3d at 988-989; Matter of Crandall v Town of Mentz, 295 AD2d 907, 908 [2002]; compare People v Scott, 79 NY2d at 499-502). Petitioners' due process claim, to the extent that it has been pursued on this appeal, fares no better. The argument that the ELD rule is not rationally related to any legitimate public interest is, for the reasons previously stated, patently without merit. While petitioners argue that an increase in accidents since the implementation of the ELD rule shows that the rule will not achieve its intended goal, we need only note that such a retrospective analysis of the success of the rule does not bear on whether it is rationally related to its intended goal or otherwise render the rule facially unconstitutional.
Finally, we reject petitioners' argument that promulgation of the ELD rule violated SAPA. The promulgation of a new rule must be done in "substantial compliance" with SAPA's provisions (State Administrative Procedure Act § 202 [8]; see Matter of Medical Socy. of State of N.Y. v Serio, 100 NY2d 854, 869 [2003]). During the public notice and comment period, OOIDA raised concerns that the proposed rule, among other things, ran afoul of the state and federal constitutional prohibitions against unreasonable searches and seizures and violated due process. DOT summarized and responded to each of OOIDA's concerns, including the constitutional [*8]challenges, in the subsequently-issued notice of adoption. The notice explained that DOT was rejecting the Fourth Amendment challenges based on the Seventh Circuit's decision in Owner-Operator Independent Drivers Assn., Inc. v United State Dept. of Transp. (840 F3d 879 [7th Cir 2016], supra) rejecting those same challenges, while also incorporating by reference the analysis undertaken by the FMCSA in response to OOIDA's factual and constitutional objections to the ELD rule. DOT further explained in the notice that it had considered OOIDA's state constitutional challenges and determined, after consultation with the Attorney General's office, that they lacked merit under controlling New York law. This was sufficient to establish DOT's substantial compliance with the requirement that it provide "a summary and an analysis of the issues raised" by OOIDA (State Administrative Procedure Act § 202 [5] [b] [i]). Further, inasmuch as there were no "significant alternatives suggested by" OOIDA in its comments, (State Administrative Procedure Act § 202 [5] [b] [i]), DOT was not required to provide a statement of the reasons why any such alternatives were not incorporated into the rule (see State Administrative Procedure Act § 202 [5] [b] [ii]; compare Matter of Medical Socy. of State of N.Y. v Serio, 100 NY2d at 870). There is therefore no procedural defect in the rule-making process that would warrant annulling the ELD rule (see Matter of Spence v New York State Dept. of Civ. Serv., 156 AD3d 987, 989-990 [2017]).
To the extent not specifically addressed, petitioners' remaining contentions have been reviewed and found to be without merit.
Garry, P.J., Lynch, Pritzker and Colangelo, JJ., concur.
ORDERED that the judgment is affirmed, without costs.



Footnotes

Footnote 1: Supreme Court also dismissed the petition/complaint as against the individual respondents for lack of personal jurisdiction. By failing to raise in their brief any arguments concerning the propriety of that determination, petitioners have abandoned any such arguments with respect thereto (see Matter of North Shore Ambulance & Oxygen Serv. Inc. v New York State Emergency Med. Servs. Council, 200 AD3d 1527, 1533 n 5 [2021]; Matter of Delfyette v New York State Bd. of Parole, 168 AD3d 1303, 1303 [2019]).

Footnote 2: Petitioners have disclaimed any challenge under the Fourth Amendment.

Footnote 3: Similarly, "there is generally only a diminished expectation of privacy in an automobile" (People v Quackenbush, 88 NY2d at 543 n 4 [internal quotation marks and citations omitted]; see Arkansas v Sanders, 442 US 753, 761 [1979]). The decreased expectation of privacy in a vehicle is occasioned by a number of factors, including that they "'operate on public streets . . . and they are subject to extensive regulation and inspection'" (People v Belton, 55 NY2d 49, 53 [1982], quoting Rakas v Illinois, 439 US 128, 154 [1978]).

Footnote 4: The issue has been considered by numerous Circuit Courts of Appeals (see United States v Maldonado, 356 F3d 130, 135 [1st Cir 2004]; United States v Castelo, 415 F3d 407, 410 [5th Cir 2005]; United States v Dominguez-Prieto, 923 F2d 464, 468 [6th Cir 1991], cert denied 500 US 936 [1991]; Owner-Operator Independent Drivers Assn., Inc. v United State Dept. of Transp., 840 F3d at 894; United States v Mendoza-Gonzalez, 363 F3d 788, 794 [8th Cir 2004]; United States v Delgado, 545 F3d 1195, 1201-1203 [9th Cir 2008], cert denied 555 US 1200 [2009]; United States v Mitchell, 518 F3d 740, 751 [10th Cir 2008]; United States v Ponce-Aldona, 579 F3d 1218 [11th Cir 2009], cert denied 558 US 1128 [2010]), as well as by a handful of state courts (see State v Beaver, 386 Mont 12, 15-16, 385 P3d 956, 958-959 [2016]; State v Hewitt, 400 NJ Super 376, 385, 947 A2d 674, 678-679 [2008]; State v Melvin, 2008 ME 118, ___, 955 A2d 245, 247 [2008]; Commonwealth v Leboeuf, 78 Mass App Ct 45, 49, 934 NE2d 1285, 1288 [2010]).