Matter of People of the State of N.Y. v Commons West, LLC (2026 NY Slip Op 01253)

Matter of People of the State of N.Y. v Commons West, LLC

2026 NY Slip Op 01253

Decided on March 5, 2026

Appellate Division, Third Department

Ceresia, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:March 5, 2026

CV-23-1255

[*1]In the Matter of The People of the State of New York, by Letitia James, as Attorney General of the State of New York, Appellant,
vCommons West, LLC, et al., Respondents.

Calendar Date:January 8, 2026

Before: Garry, P.J., Ceresia, Fisher, McShan and Mackey, JJ.

Letitia James, Attorney General, Albany (Patrick A. Woods of counsel), for appellant.
Bond, Schoeneck & King PLLC, Rochester (Curtis A. Johnson of counsel), for respondents.
The Legal Aid Society, New York City (Evan Henley of counsel) and Legal Services of the Hudson Valley, Yonkers (Marcie Kobak of counsel), for Safe Horizon, Inc. and another, amici curiae.
Emery Celli Brinckerhoff Abady Ward & Maazel LLP, New York City (Sana F. Mayat of counsel) and University at Buffalo School of Law Civil Rights & Housing Clinic, Buffalo (Heather R. Abraham of counsel), for CNY Fair Housing, Inc. and others, amici curiae.
New York Civil Liberties Union Foundation, New York City (Molly K. Biklen of counsel) and American Civil Liberties Union Foundation, New York City (Amanda Meyer of counsel), for New York Civil Liberties Union and another, amici curiae.
Covington & Burling LLP, New York City (John August of counsel), for National Housing Law Project and others, amici curiae.
Bronx Legal Services, Bronx (Rachel W. W. Granfield of counsel) and Legal Services NYC, New York City (Melissa Banks of counsel) and Queens Legal Services, Jamaica (Veronica Cook of counsel), for Neighbors Together and others, amici curiae.

Ceresia, J.
Appeals (1) from a judgment of the Supreme Court (Mark Masler, J.), entered June 28, 2023 in Tompkins County, which, in a proceeding pursuant to Executive Law § 63 (12), granted respondents' motion to dismiss the petition, and (2) from a judgment of said court, entered December 11, 2024 in Tompkins County, which, among other things, granted respondents' cross-motion for summary judgment on their counterclaim for a declaration that Executive Law § 296 (5) (a) (1) is unconstitutional on its face.
It is beyond dispute that New York, like many states, faces a housing affordability crisis. There is also no question that the federal Section 8 housing choice voucher program, the largest rental assistance program in the nation, is a critical tool in advancing the availability of affordable housing. The Legislature, recognizing that landlords' refusal to accept Section 8 housing vouchers is a significant barrier to the program, passed a law prohibiting discrimination against potential tenants based on their source of income, effectively requiring landlords to participate in the Section 8 program. We acknowledge the important points made by the amici curiae who have submitted briefs in this matter, including that expanding voucher acceptance is essential to achieving the remedial purpose of the federal program upon which hundreds of thousands of New Yorkers rely; that source-of-income discrimination is often a proxy for discrimination against other protected classes; and that the challenged statute reflects a deliberate — and laudable — legislative effort to address those interrelated concerns. Nonetheless, as a consequence of this law, landlords are now forced to consent to governmental searches of their rental properties and records. Given that, for the reasons that follow, the source-of-income discrimination law violates landlords' Fourth Amendment rights to be free from unlawful searches, we are constrained to conclude that the law is unconstitutional on its face.
In 2020, two prospective tenants filed complaints with petitioner, asserting that respondents, the owners of residential rental properties in the City of Ithaca, Tompkins County, had refused to rent apartments to them on the ground that they were receiving housing assistance pursuant to Section 8 of the United States Housing Act of 1937 (42 USC § 1437f). After investigating, petitioner commenced this Executive Law § 63 (12) proceeding against respondents, alleging that, by refusing to rent to individuals receiving Section 8 housing assistance, respondents were violating Executive Law § 296 (5) (a) (1), which forbids housing discrimination based on individuals' lawful source of income, defined to include Section 8 vouchers (see Executive Law § 292 [36]). Petitioner sought to permanently enjoin respondents from future violations and require them to design and implement nondiscriminatory housing accommodation policies regarding sources of income, set aside a percentage of units in each of their [*2]buildings for Section 8 recipients for three years, undergo court monitoring and pay restitution and civil penalties.
Respondents moved, among other things, to dismiss the petition pursuant to CPLR 3211 (a) (7) for failure to state a claim, arguing, as relevant here, that the source-of-income discrimination law is unconstitutional on its face because it, in effect, requires landlords to take part in the Section 8 program, which in turn obligates them to consent to warrantless searches of their premises and records in violation of the Fourth Amendment.[FN1] Together with their motion to dismiss, respondents also filed an answer containing counterclaims, including for a judgment declaring the source-of-income discrimination law unconstitutional. Petitioner opposed dismissal of the petition, asserting that any claimed harm to respondents was speculative and that, in any event, the inspections required of landlords taking part in Section 8 did not violate the Fourth Amendment. Supreme Court agreed with respondents that the challenged law forced them to consent to warrantless searches, which the Fourth Amendment forbids. As a result, the court granted respondents' motion, finding Executive Law § 296 (5) (a) (1) to be "unconstitutional to the extent that it makes it an unlawful discriminatory practice to refuse to rent or lease housing accommodations to any person, or group of persons, because their source of income includes Section 8 vouchers," and entered judgment dismissing the petition.
Following entry of the judgment, petitioner moved to renew its opposition to respondents' motion to dismiss the petition, based upon new facts and/or a change in the law (see CPLR 2221 [e] [2]). In support of its motion to renew, petitioner submitted a new policy that had recently been issued by New York State Homes and Community Renewal (hereinafter HCR), a public housing agency (hereinafter PHA) responsible for administering the Section 8 program. The policy, which had a stated intention of addressing the constitutional concerns raised by Supreme Court, provided that in instances where a landlord in Tompkins County refused to allow warrantless searches, HCR would have to obtain either consent from another authorized person or an administrative warrant before searching. Petitioner argued that this policy eliminated the prospect of nonconsensual, warrantless searches. Respondents opposed the motion to renew on several grounds and also cross-moved for summary judgment on their counterclaim for a declaratory judgment. Supreme Court concluded, among other things, that the new policy would not have changed its prior determination because it did not cure the facial invalidity of the source-of-income discrimination law. As a result, the court entered judgment denying petitioner's motion to renew and granting respondents' cross-motion for summary judgment on the counterclaim. Petitioner appeals both judgments.
We turn initially to petitioner's contention that respondents' constitutional [*3]challenge is nonjusticiable because the risk of Fourth Amendment harm is too speculative and may never occur, given that respondents have not yet been accepted into the Section 8 program and have not been subjected to any searches. Although it is true that no inspections of respondents' property or records have been carried out, a party may challenge the constitutionality of a law when there is a credible threat that the government will enforce it against them (see Susan B. Anthony List v Driehaus, 573 US 149, 159 [2014]; MedImmune, Inc. v Genentech, Inc., 549 US 118, 129 [2007]; Brokamp v James, 66 F4th 374, 388-389 [2d Cir 2023], cert denied ___ US ___, 144 S Ct 1095 [2024]; Sullivan v New York State Joint Commn. on Pub. Ethics, 207 AD3d 117, 132-133 [3d Dept 2022]). To be sure, this very proceeding resulted from petitioner's attempt to enforce the source-of-income discrimination law against respondents, who face a range of consequences for refusing to comply with it, including mandatory set-asides of their units, ongoing court monitoring and civil penalties (see Sullivan v New York State Joint Commn. on Pub. Ethics, 207 AD3d at 132; see also National Org. for Marriage, Inc. v Walsh, 714 F3d 682, 690 [2d Cir 2013]). Therefore, the question of whether the source-of-income discrimination law passes constitutional muster qualifies as a justiciable controversy.
As for the merits of the constitutional claim, it is well settled that "[d]uly enacted legislation is entitled to a strong presumption of constitutionality," and thus the proponent of a facial constitutional challenge bears the "heavy burden" of showing that "in any degree and in every conceivable application, the law suffers wholesale constitutional impairment" (Cuomo v New York State Commn. on Ethics & Lobbying in Govt., 44 NY3d 141, 149 [2025] [internal quotation marks and citations omitted]; see Matter of Walt Disney Co. & Consol. Subsidiaries v Tax Appeals Trib. of the State of N.Y., 42 NY3d 538, 550 [2024], certs denied ___ US ___, 145 S Ct 1125 [2025], ___ US ___, 145 S Ct 1126 [2025]; Matter of Ciardullo v McDonnell, 241 AD3d 45, 54 [3d Dept 2025]). Such a challenge requires proof beyond a reasonable doubt, and the statute will be invalidated only as a last resort, as facial constitutional challenges are generally disfavored (see Grand S. Point, LLC v Bassett, 230 AD3d 49, 59 [3d Dept 2024], appeal dismissed 42 NY3d 1025 [2024], lv denied 43 NY3d 907 [2025]; Matarazzo v CHARLEE Family Care, Inc., 218 AD3d 941, 942-943 [3d Dept 2023]).
The particulars of respondents' constitutional claim are as follows. By prohibiting discrimination based upon source of income, respondents argue, the Legislature has required landlords to accept Section 8 vouchers and, as a condition of participating in that program, agree to allow searches of their properties and records. More specifically, under the governing federal statutes and regulations, a potential Section 8 apartment must meet certain housing [*4]quality standards (see 42 USC § 1437f [o] [8] [B]; 24 CFR 5.703 [a]), and in order to determine whether these standards are met, the local PHA administering the program must perform an inspection of the apartment, the equipment that services the apartment and the common areas of the building before the apartment is occupied and again not less than biennially during the term of the tenancy (see 42 USC § 1437f [o] [8] [A], [D]; 24 CFR 982.405). Further, for purposes of assessing whether the rent charged by the landlord is reasonable, the landlord must make available to the PHA its records concerning the apartment in question as well as the amounts of rent it charges for other units, both in the building in question and in other buildings (see 24 CFR 982.507). The landlord must sign a standard housing assistance payment (hereinafter HAP) contract, in which it agrees to provide "full and free access" to the apartment, the premises and all relevant accounts and records. Respondents contend that these inspection mandates force them to surrender the Fourth Amendment's protections against governmental searches of private property in the absence of either voluntary consent or a warrant, neither of which are provided for here.
Petitioner argues that this Fourth Amendment claim fails because the source-of-income discrimination law does not, on its face, authorize warrantless searches. We reject this argument. In Sokolov v Village of Freeport (52 NY2d 341 [1981]), the Court of Appeals held that a village ordinance violated landlords' Fourth Amendment rights by requiring them to obtain a permit, which could not be issued without an inspection of the premises (id. at 345-346; see also ATM One, LLC v Incorporated Vil. of Hempstead, 91 AD3d 585, 586-587 [2d Dept 2012]; Town of Brookhaven v Ronkoma Realty Corp., 154 AD2d 665, 666 [2d Dept 1989]). The ordinance in Sokolov was found to be constitutionally infirm even though such inspections were not explicitly required on its face but, instead, were indirectly made a condition of obtaining a permit to rent one's property (see Sokolov v Village of Freeport, 52 NY2d at 346). Similarly, here, although the source-of-income discrimination law does not, itself, require any searches, they are indirectly compelled through the terms of the Section 8 program and the HAP contract, which obligate landlords to make their premises and records available for searches.
Next, petitioner contends that the facial challenge fails because respondents cannot show that the inspection scheme is unconstitutional in all its applications, since the PHA could get tenant consent or an administrative warrant to perform a search. This argument misses the mark. "[W]hen addressing a facial challenge to a statute authorizing warrantless searches, the proper focus of the constitutional inquiry is searches that the law actually authorizes, not those for which it is irrelevant" (Los Angeles v Patel, 576 US 409, 418-419 [2015]). Such a statute "do[es] [*5]no work" when a tenant consents or a warrant is secured (id. at 419).
Petitioner also asserts that an administrative search of the type contemplated here is permissible because respondents have an opportunity to seek precompliance review, in the form of a CPLR article 78 proceeding, prior to facing penalties for failing to comply with a search (see generally Los Angeles v Patel, 576 US at 420-421). Such a proffered remedy, however, is toothless. A landlord is required to sign the HAP contract, thereby expressly consenting to all searches before any opportunity to challenge a search would arise. Thus, the landlord would be left in the untenable position of attempting to challenge in court a search to which he or she had already consented in writing. Although we are mindful that the Second Circuit recently approved of a CPLR article 78 proceeding as a valid opportunity for a landlord to seek precompliance review of a records search (see Hudson Shore Assoc. L.P. v New York, 139 F4th 99, 109 [2d Cir 2025]), it is significant that the statutory scheme at issue in that case did not require a landlord to have previously provided blanket consent to search. Furthermore, even if CPLR article 78 were an appropriate avenue for review, we are unconvinced that it would necessarily occur before the landlord suffered any penalties for failing to comply with the search. That is, the HAP contract provides that, upon a landlord's breach of a contractual requirement which would include refusing to allow an inspection the PHA may exercise any of its rights thereunder, including suspending or terminating rent payments to the landlord. While it is true that the contract requires the PHA to provide the landlord with written notice when it determines that a breach has occurred, nothing prevents the PHA from exercising its rights immediately, before a court proceeding has been commenced.
Petitioner further claims that a warrantless administrative search is proper in this context because the residential rental market is a closely regulated industry, and the inspection scheme at issue furnishes a constitutionally adequate substitute for a warrant (see Los Angeles v Patel, 576 US at 424; New York v Burger, 482 US 691, 700 [1987]). We begin by noting that the Court of Appeals held in Sokolov that the rental housing market does not constitute a closely regulated industry (see Sokolov v Village of Freeport, 52 NY2d at 346 n 1), a ruling that has not since been overturned. Petitioner nevertheless urges us to find that the regulatory landscape has changed in the intervening decades since Sokolov was decided, with the pace of regulation in rental housing significantly increasing to the point that the industry should now be considered closely regulated. Even assuming, without deciding, that the residential rental market meets the definition of a closely regulated industry, petitioner's argument still fails because the requisite constitutional safeguards are not present here.
An inspection scheme must assure that the discretion of the inspecting officers is "carefully limited in time, place, and scope" (New York v Burger, 482 US at 703 [internal quotation marks and citation omitted]), and we find that the Section 8 inspection regime lacks these safeguards. With respect to timing, although the regulations set benchmarks for when inspections should be performed at the outset of the tenancy and then at least once every two years thereafter there is no further guidance as to the frequency of the inspections and, indeed, they must be done whenever the PHA receives a complaint (see 42 USC § 1437f [o] [8] [F]; 24 CFR 982.405 [d], [e]). As for the place and scope of a search, while the regulations offer examples of interior spaces that may be searched and explain the purposes of the search, there are no limitations placed on what may be inspected. When combined with the HAP contract, which requires landlords to allow "full and free access to the contract unit and the premises, and to all accounts and other records of the owner that are relevant to the HAP contract," the place and scope of a permissible search are exceedingly broad. Under these circumstances, the inspection scheme does not provide adequate safeguards (compare Matter of Murtaugh v New York State Dept. of Envtl. Conservation, 42 AD3d 986, 989 [4th Dept 2007], lv dismissed 9 NY3d 971 [2007]).
In addition, petitioner claims that the constitutionality of the source-of-income discrimination law is buttressed by HCR's new policy. As mentioned above, after Supreme Court's initial determination in this case, HCR enacted a policy concerning the manner in which it intended to administer Section 8 housing in Tompkins County. Under the policy, a landlord who wishes to object to Section 8 participation on Fourth Amendment grounds must make their objection known in writing before any Section 8 voucher holder occupies a unit in their building. Once the written objection is received, the landlord must sign the HAP contract, but HCR represents that it will not rely on the contract to gain access to the premises and records, instead either seeking consent from another authorized person or obtaining an administrative warrant.
Simply put, this policy does not cure the facial unconstitutionality of the source-of-income discrimination law. The policy does not apply statewide and, in fact, does not even cover all of Tompkins County, as HCR is not the only Section 8 administrator there. Further, the policy is merely voluntary and does not have the force of law. Although it appears on the surface to resemble the consent-or-warrant provisions approved of in other cases(see Pashcow v Town of Babylon, 53 NY2d 687, 688 [1981]; Wisoff v City of Schenectady, 116 AD3d 1187, 1189 [3d Dept 2014], appeal dismissed 23 NY3d 1012 [2014], lv denied 24 NY3d 908 [2014]; McLean v City of Kingston, 57 AD3d 1269, 1271 [3d Dept 2008], lv dismissed 12 NY3d 848 [2009]), it does not have statutory effect [*6]and therefore does not change the warrantless nature of the searches "the law actually authorizes" across the state (Los Angeles v Patel, 576 US at 418).
As a final matter, petitioner advocates for an alternative remedy to declaring the source-of-income discrimination law unconstitutional. Rather than doing so, petitioner argues that we should apply a limiting construction to the HAP contract and find that the provision requiring landlords to allow access to their properties and records does not, by itself, establish voluntary consent to the Section 8 inspections, and that additional evidence of consent or a warrant would be required. Not only is this argument unpreserved for review inasmuch as it was not raised below, but we cannot countenance an interpretation of the contract that would run directly counter to its express terms. The HAP contract states that the owner "must" provide pertinent information, "must" grant access to electronic records and "shall" afford the PHA and other entities "full and free access" to its premises and records. Petitioner's reading would render these provisions meaningless and would also graft additional procedures onto the HAP contract that are prohibited by federal regulation (see 24 CFR § 982.451 [a] [1]) and by the contract's own merger clause, which provides that it constitutes the entire agreement between the PHA and the landlord (see Donohue v Cuomo, 38 NY3d 1, 9 [2022]; Powerflex Solar, LLC v Solar PV Pros, LLC, 230 AD3d 834, 838 [3d Dept 2024]).
Based upon the foregoing, Supreme Court properly granted respondents' motion to dismiss the petition, denied petitioner's motion to renew, granted respondents' cross-motion for summary judgment and declared the source-of-income provision in Executive Law § 296 (5) (a) (1) facially unconstitutional to the extent that it makes it an unlawful discriminatory practice to refuse to rent or lease housing accommodations to any person, or group of persons, because their source of income includes Section 8 vouchers. Petitioner's remaining contentions, to the extent not expressly addressed here, have been considered and found to be without merit and/or academic.
Garry, P.J., Fisher, McShan and Mackey, JJ., concur.
ORDERED that the judgments are affirmed, without costs.

Footnotes

Footnote 1: Respondents also raised an as-applied constitutional challenge to the statute. However, Supreme Court's ruling was limited to the facial challenge, and this is the focus of the parties' briefing on appeal.