Matter of Super Smoke N Save LLC v New York State Cannabis Control Bd.
2026 NY Slip Op 03715
June 11, 2026
Appellate Division, Third Department
Corcoran, J.
Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.
This decision is uncorrected and subject to revision before publication in the Official Reports.

Matter of Super Smoke N Save LLC et al., Petitioners, and Brecken Gold Athletics NYC LLC et al., Respondents,
v
New York State Cannabis Control Board et al., Appellants.

Decided and Entered:June 11, 2026
CV-25-0165
Calendar Date: April 29, 2026
Before: Clark, J.P., Aarons, Pritzker, Mackey And Corcoran, JJ.

Letitia James, Attorney General, Albany (Patrick A. Woods of counsel), for New York State Cannabis Control Board and others, appellants.
Steven Banks, Corporation Counsel, New York City (Geoffrey E. Curfman of counsel), for New York City Sheriff's Office and another, appellants.

[*1]
Corcoran, J.
Appeals, by permission, (1) from an order of the Supreme Court (Thomas Marcelle, J.), entered January 13, 2025 in Albany County, which, in a proceeding pursuant to CPLR article 78, granted petitioners' motion for a preliminary injunction, and (2) from a supplemental order of said court, entered January 21, 2025 in Albany County, which granted petitioners' motion to clarify the prior order.
Petitioners commenced this CPLR article 78 proceeding to enjoin enforcement of certain provisions of the Marihuana Regulation and Taxation Act (see L 2021, ch 92, § 2 [hereinafter the Cannabis Law]) and related regulations authorizing inspections of cannabis and cannabinoid hemp retailers.FN1 Following an evidentiary hearing, Supreme Court granted petitioners' request for a preliminary injunction, which prohibited respondents from conducting warrantless inspections of petitioners' businesses, limited certain enforcement and inspection activities, and ordered removal of certain notices of violation and the return of seized property. Respondents Cannabis Control Board (hereinafter CCB), CCB's Chair, Office of Cannabis Management (hereinafter OCM) and OCM's interim executive director (hereinafter collectively referred to as the state respondents) and respondents New York City Sheriff's Office and Sheriff (hereinafter collectively referred to as the city respondents) appealed separately, and this Court temporarily stayed certain portions of Supreme Court's injunction pending determination of the appeals.
In March 2021, the Legislature enacted the Cannabis Law to legalize adult-use cannabis and regulate its production and sale. The legislation aimed to establish a licensed, well-regulated cannabis industry, reduce an illegal drug market, diminish the participation of otherwise law-abiding citizens in that enterprise and generate sales tax revenue (see Cannabis Law § 2; Matter of Mia S. [Michelle C.], 212 AD3d 17, 19-20 [2d Dept 2022], lv dismissed 39 NY3d 1118 [2023]). The Legislature created CCB and OCM to oversee and implement the law (see Cannabis Law §§ 7, 8). CCB and OCM license and regulate entities engaged in cannabis-related activities, conduct inspections and enforce compliance with statutes and regulations (see Cannabis Law §§ 11 [5]; 138-a; 9 NYCRR 133.25 [a]). In April 2024, the Cannabis Law was amended to grant local agencies additional enforcement authority to curtail the unlicensed sale and marketing of cannabis. As amended, the Cannabis Law enables any county or city to "adopt a local law authorizing an officer or agency to conduct regulatory inspections of any place of business located within the county or city . . . not listed on the directory maintained by" OCM (Cannabis Law § 131 [3] [b]). The state Legislature simultaneously amended the New York City Code to authorize the New York City Sheriff to "conduct regulatory inspections of any place of business . . . where cannabis, cannabis product, or any products marketed or labeled as such, are sold, [*2]or offered to be sold, where no registration, license, or permit has been issued pursuant to the cannabis law" (Administrative Code of City of NY § 7-552 [a]). This amendment was enacted as part of the 2024-2025 State budget (see L 2024, ch 55, part G, § 11).
Petitioners are businesses engaged in the licensed retail sale of cannabinoid hemp products containing less than 0.3% of delta-9 tetrahydrocannabinol (hereinafter THC), the psychoactive compound in cannabis. Petitioners contend that respondents conducted, or sought to conduct, warrantless inspections of their premises, ostensibly to identify and abate the unlicensed sale of cannabis. Petitioners challenge the statutory and regulatory scheme authorizing these inspections as unconstitutional facially and as applied to them. They also argue that local law enforcement participation in these inspections is unlawful. Supreme Court found that the inspections did not satisfy the administrative search exception to the Fourth Amendment's warrant requirement, then held that petitioners had demonstrated a likelihood of success on the merits, irreparable harm without injunctive relief and equities that weighed in their favor. As relevant here, Supreme Court determined that the statutory and regulatory scheme failed to provide a constitutionally adequate substitute for a warrant and that the inspections impermissibly focused on criminal enforcement. Supreme Court also held that the New York City Sheriff lacked statutory authority to conduct administrative inspections of licensed businesses in the first instance. Respondents appealed,FN2 and, for the following reasons, we find that Supreme Court erred in granting a preliminary injunction.
A party seeking a preliminary injunction must demonstrate a likelihood of success on the merits, irreparable harm in the absence of an injunction, and that the equities tip in its favor (see CPLR 6301; Nobu Next Door, LLC v Fine Arts Hous., Inc., 4 NY3d 839, 840 [2005]; Matter of New York State Off. of Victim Servs. v Marshall, __ AD3d __, __, 2026 NY Slip Op 02184, *1 [3d Dept 2026]). "Because preliminary injunctions prevent the litigants from taking actions that they are otherwise legally entitled to take in advance of an adjudication on the merits," the remedy is considered a "drastic" one that should be "issued cautiously" (Rural Community Coalition, Inc. v Village of Bloomingburg, 118 AD3d 1092, 1094-1095 [3d Dept 2014] [internal quotation marks, brackets and citations omitted]; see Eklund v Pinkey, 31 AD3d 908, 909 [3d Dept 2006]). "The decision to grant or deny a request for a preliminary injunction is committed to the sound discretion of the trial court, and our review is limited to whether Supreme Court has either exceeded or abused its discretion as a matter of law" (Camp Bearberry, LLC v Khanna, 212 AD3d 897, 898 [3d Dept 2023] [internal quotation marks and citations omitted]; see New York State Off. of Victim Servs. v Marshall, ___ AD3d at ___, 2026 NY Slip Op [*3]02184, *1). "Notably, where, as here, the constitutionality of legislation is challenged, the burden becomes more difficult as there exists an exceedingly strong presumption of constitutionality" (Schulz v State of N.Y. Exec., 108 AD3d 856, 857 [3d Dept 2013] [internal quotation marks and citation omitted], lv dismissed 21 NY3d 1051 [2013]).
We begin by analyzing petitioners' facial constitutional challenge. Facial challenges to legislative acts are "the most difficult challenge[s] to mount successfully, [because] the challenger must establish that no set of circumstances exists under which the [law] would be valid" (United States v Salerno, 481 US 739, 745 [1987]; see White v Cuomo, 38 NY3d 209, 216 [2022]). Petitioners, as the parties mounting such a challenge, bear the
"extraordinary burden of proving beyond a reasonable doubt that the challenged provision suffers wholesale constitutional impairment. Thus, a facial challenge must fail so long as there are circumstances under which the challenged provision could be constitutionally applied. In other words, the challenger must establish that no set of circumstances exists under which the [law] would be valid" (Matter of Owner Operator Ind. Drivers Assn., Inc. v New York State Dept. of Transp., 40 NY3d 55, 61 [2023] [internal quotation marks, ellipsis and citations omitted]; see Matter of People of the State of N.Y. v Commons West, LLC, __ AD3d __, __, 254 NYS3d 276, ___, 2026 NY Slip Op 01253, *4-6 [3d Dept 2026]; accord City of Los Angeles v Patel, 576 US 409, 415 [2015]).
The Fourth Amendment to the US Constitution prohibits "unreasonable searches and seizures" (US Const, 4th Amend).FN3 "[W]arrantless searches and seizures are per se unreasonable unless they fall within one of the acknowledged exceptions to the Fourth Amendment's warrant requirement" (People v Sanders, 26 NY3d 773, 776 [2016] [internal quotation marks and citation omitted]; see City of Los Angeles v Patel, 576 US at 419). The "warrant requirement applies to commercial premises and encompasses administrative inspections designed to enforce a regulatory scheme" (Matter of Owner Operator Ind. Drivers Assn., Inc. v New York State Dept. of Transp., 40 NY3d at 62; see New York v Burger, 482 US 691, 699-700 [1987]). One established exception, the administrative search, is "predicated on the Legislature's determination that to protect the public interest, particular commodities or endeavors should be controlled" (People v Rizzo, 40 NY2d 425, 428 [1976]). It applies to commercial property employed in a "closely" or "pervasively" regulated industry, where "the privacy interests of the owner are weakened and the government interests in regulating particular businesses are concomitantly heightened" (New York v Burger, 482 US at 702 [internal quotation marks omitted]). Because "the closely regulated industry is the exception" rather than the rule (City of Los Angeles v Patel, 576 US at 424 [internal quotation marks, ellipsis and citation [*4]omitted]), the administrative search has been narrowly applied to select industries, such as gun dealerships (see United States v Biswell, 406 US 311, 315-316 [1972]), mining (see Donovan v Dewey, 452 US 594, 596 [1981]), automobile salvage yards (see New York v Burger, 482 US at 703-707), liquor dealers (see Colonnade Catering Corp. v United States, 397 US 72, 77 [1970]) and commercial transportation (see United States v Navas, 597 F3d 492, 501 [2d Cir 2010], cert denied 562 US 954 [2010]; Matter of Owner Operator Ind. Drivers Assn., Inc. v New York State Dept. of Transp., 40 NY3d at 57).
An administrative search is permissible when three requirements are met (see City of Los Angeles v Patel,576 US at 426; New York v Burger ,482 US at 702; People v Quackenbush, 88 NY2d 534, 541 [1996]). First, there must be a "substantial government interest" informing the regulatory scheme; second, "the warrantless inspections must be necessary to further [that] regulatory scheme"; and finally, the inspection program, "in terms of the certainty and regularity of its application, must provide a constitutionally adequate substitute for a warrant" (New York v Burger, 482 US at 702-703 [internal quotation marks, brackets and citations omitted]). The inspection scheme must limit the discretion of officials by defining the time, place and scope of inspections (see id. at 703; Matter of People of the State of N.Y. v Commons West, LLC, ___ AD3d at ___, 2026 NY Slip Op 01253, *5). Courts may consider statutes and "valid agency [rules or] regulations" when deciding the facial validity of an administrative search (Anobile v Pelligrino, 274 F3d 45, 56 [2d Cir 2001], amended by 284 F3d 104 [2d Cir 2002], 303 F3d 107 [2d Cir 2002]; see e.g. Matter of Owner Operator Ind. Drivers Assn., Inc. v New York State Dept. of Transp., 40 NY3d at 57).
Petitioners do not seriously dispute the first or second prongs of the Burger test, i.e., that cannabis is a closely regulated industry and that warrantless inspections are necessary to further the regulatory scheme. Rather, petitioners argue that the inspection scheme fails Burger's third prong. Accordingly, we examine whether the statutory and regulatory scheme furnish an adequate substitute for a warrant under the Fourth Amendment (see New York v Burger, 482 US at 703; Matter of Owner Operator Ind. Drivers Assn., Inc. v New York State Dept. of Transp., 40 NY3d at 65). To satisfy this requirement, the regulatory scheme must provide either a meaningful limitation on the otherwise broad discretion afforded to inspectors or a satisfactory means to minimize the risk of arbitrary or abusive enforcement by ensuring that inspections are limited in scope to that which is necessary to meet the governmental interest justifying the search (see New York v Burger, 482 US at 702-703; Matter of Owner Operator Ind. Drivers Assn., Inc. v New York State Dept. of Transp., 40 NY3d at 65-66).
Applying these substantive rules to petitioners' attempt to show [*5]the likelihood of a successful constitutional challenge, we find that Supreme Court abused its discretion in granting the preliminary injunction because petitioners failed to show that the statutory and regulatory scheme is invalid in all of its applications (see Matter of Owner Operator Ind. Drivers Assn., Inc. v New York State Dept. of Transp., 40 NY3d at 61; Matter of People of State of N.Y. v Commons West, LLC, ___ AD3d at ___, 2026 NY Slip Op 01253, *4-5; Sullivan v New York State Joint Commn. on Pub. Ethics, 207 AD3d 117, 129 [3d Dept 2022]).FN4 The Cannabis Law and its implementing regulations, when considered together, adequately define how inspections are conducted (see Anobile v Pelligrino, 274 F3d at 56-57). The regulations require applicants, as a condition of licensure, to consent in advance to regulatory inspections of their premises (see 9 NYCRR 133.3 [a]). Licensees are notified that their businesses are subject to "regulatory inspections" (Cannabis Law § 11 [3], [5]) of defined locations, including places of business and vehicles used in connection with such business, while inspections beyond those parameters require probable cause (see Cannabis Law §§ 10 [8]; 11 [3], [5]; Matter of West v Alexander, 242 AD3d 1407, 1411 [3d Dept 2025]). Though the regulations require businesses to cooperate with inspectors, they do not authorize OCM to break into locked areas or storage cabinets. Rather, they authorize OCM to impose administrative penalties for noncooperation (see 9 NYCRR 133.3 [e]).FN5 Inspections under local laws are limited to a business' operating hours and must "be conducted for purposes of civil administrative enforcement with respect to the premises lacking applicable registrations, licenses or permits issued" by OCM (Cannabis Law § 131 [3] [b]). The implementing regulations constrain the permissible scope of inspections by identifying the categories of items subject to examination, including specified products, records and related materials (see 9 NYCRR 133.3 [a]; 133.25 [a]; compare Matter of People of the State of N.Y. v Commons West, LLC, ___ AD3d at ___, 2026 NY Slip Op 01253, *5). The regulations notify licensees that inspectors accompanied by peace or police officers may conduct a site visit and which individuals connected to the business may be interviewed (see 9 NYCRR 133.3 [a]; 133.25 [a]). Finally, if a violation of the Cannabis Law is discovered through an administrative inspection, the statute lists which products may be seized (see Cannabis Law § 138-a [2]). When viewed as a whole, we find that the statutory and regulatory framework provides "meaningful limitation[s]" on an inspector's discretion and ensures that "the search is limited in scope to that necessary to meet the interest that legitimized the search in the first place" (People v Quackenbush, 88 NY2d at 542 [internal quotation marks and citation omitted]; see New York v Burger, 482 US at 703). While petitioners contend that the inspection scheme is a pretext [*6]designed to discover contraband and to detect criminal activity, the state respondents represented at oral argument that these inspections have not resulted in any criminal convictions and petitioners cite only one arrest that was not prosecuted. Moreover, an otherwise lawful administrative search is not rendered unconstitutional merely because police participate in the search or because the search uncovers evidence of criminal activity (see New York v Burger, 482 US at 716-717; Matter of Owner Operator Ind. Drivers Assn., Inc. v New York State Dept. of Transp., 205 AD3d 53, 62 [3d Dept 2022], mod 40 NY3d 55 [2023]). Accordingly, Supreme Court erred in concluding that petitioners were likely to succeed on the merits of their facial challenge.
To the extent petitioners challenge the manner in which inspections were applied to their particular businesses, these "as-applied" claims are premature because they have not been subjected to administrative review. A facial challenge requires examination of the statute "on a cold page" and without reference to the particular conduct (Matter of Independent Ins. Agents & Brokers of N.Y., Inc. v New York State Dept. of Fin. Servs., 39 NY3d 56, 64 [2022] [internal quotation marks and citations omitted]), whereas an "as-applied" challenge "requires an analysis of the facts of a particular case" (Matter of Real Estate Bd. of N.Y., Inc. v City of New York, 165 AD3d 1, 9 n 3 [1st Dept 2018] [internal quotation marks and citations omitted]). It is well settled that a party challenging administrative action must exhaust available administrative remedies before seeking judicial review (see Town of Oyster Bay v Kirkland, 19 NY3d 1035, 1038 [2012], cert denied 568 US 1213 [2013]; Matter of Ferris v Grass, 219 AD3d 1008, 1009 [3d Dept 2023]; Matter of Guilderland Print., Inc. v New York State Off. of Temporary & Disability Assistance, 163 AD3d 1318, 1320 [3d Dept 2018]). The doctrine of administrative exhaustion serves important purposes, including (1) "preventing premature judicial interference with the administrators' efforts to develop, even by some trial and error, a co-ordinated, consistent and legally enforceable scheme of regulation" and (2) allowing an agency "to prepare a record reflective of its expertise and judgment" (Watergate II Apts. v Buffalo Sewer Auth., 46 NY2d 52, 57 [1978] [internal quotation marks and citation omitted]; see Young Men's Christian Assn. v Rochester Pure Waters Dist., 37 NY2d 371, 375 [1975]). Although exhaustion may be excused where a party raises a purely constitutional issue or where resorting to administrative remedies would be futile, the mere assertion of a constitutional claim does not excuse the failure to pursue available administrative procedures capable of providing relief (see Town of Oyster Bay v Kirkland, 19 NY3d at 1038-1039; Matter of Schulz v State of New York, 86 NY2d 225, 232 [1995], cert denied 516 US 944 [1995]; Matter of Haddad v City of Albany, 149 AD3d 1361, 1364[*7][3d Dept 2017]).
Here, the governing regulations offer prompt administrative review of enforcement actions (see 9 NYCRR 133.10-133.24), and petitioners concede that they failed to pursue those remedies. The proof adduced at the evidentiary hearing, including testimony from multiple witnesses and video evidence of the inspections, underscores how petitioners' as-applied claims depend upon how the cannabis statute and regulations are administered by the agency charged with regulating the industry. Petitioners' fact-specific allegations regarding the seizure and/or destruction of lawful products, searches of nonpublic locations, participation of unauthorized or untrained police officers and the lack of administrative review by a disinterested arbiter could have been, and should have been, tested through established administrative hearing procedures, both to redress potential injury and to develop a record reflecting agency expertise for judicial review. For instance, respondents dispute petitioners' allegations about the number of officers present at certain inspections, that officers disabled video surveillance during the inspections, and that OCM inspectors conducted a particular search. Nor is it clear whether certain products constituted contraband based on labeling violations, whether they were allowed to be stored in anticipation of mail-order sales or whether they were unlawfully destroyed onsite by inspectors rather than inventoried as required. Petitioners' failure to exhaust available administrative remedies denied respondents the opportunity to test their claims and precludes petitioners from showing that they are likely to succeed on their as-applied claims now.
Turning to the preliminary injunction granted against the city respondents, Supreme Court erroneously concluded that the New York City Sheriff lacked statutory authority to conduct warrantless administrative inspections of petitioners' businesses. Cannabis Law § 131 (3) (b) authorizes a county or a city to conduct regulatory inspections of businesses within that locality "not listed on the directory [of licensees] maintained by" OCM. The parallel provision in Administrative Code § 7-552 (a) authorizes the New York City Sheriff to conduct regulatory inspections of any place of business "where cannabis, cannabis product, or any products marketed or labeled as such, are sold, or offered to be sold, where no registration, license, or permit has been issued pursuant to the [C]annabis [L]aw." Supreme Court interpreted Cannabis Law § 131 (3) (b) as precluding local enforcement authorities from inspecting any business that possessed a state-issued cannabis-related license. We disagree.
Both Cannabis Law § 131 (3) (b) and Administrative Code § 7-552 (a) (2) permit inspections of businesses "lacking applicable registrations, licenses or permits issued pursuant" to the Cannabis Law (emphasis added). Under principles of statutory construction, "[w]henever there is a general and a particular [*8]provision in the same statute, the general does not overrule the particular but applies only where the particular enactment is inapplicable" (McKinney's Cons Laws of NY, Book 1, Statutes § 238). In other words, if the general and specific provisions of a statute conflict, the particular provision controls. Therefore, the broad prohibition on regulatory searches of businesses with a license must yield to the specific provision describing a narrower subject, i.e., businesses selling cannabis products without an applicable license. Moreover, if the existence of any license were sufficient to preclude an inspection, the term "applicable" would be superfluous. Such a construction is inconsistent with the well-settled principle that "all parts of a statute are intended to be given effect and a statutory construction which renders one part meaningless should be avoided" (Matter of Anonymous v Molik, 32 NY3d 30, 37 [2018] [internal quotation marks and citation omitted]). We interpret these provisions to allow appropriate local officials to inspect hemp retailers suspected of selling cannabis products that exceed the permissible percentage of THC to constitute hemp. Accordingly, Supreme Court erred in concluding that petitioners demonstrated a likelihood of success on the merits sufficient to enjoin the city respondents from conducting searches.
As to the remaining preliminary injunction factors, petitioners devoted scant attention to the prospect of irreparable injury. Although petitioners contend that respondents illegally seized their products or posted violation notices improperly, these injuries may be remedied by money damages or through equitable relief after an administrative hearing or CPLR article 78 proceeding. In any event, their speculative claims of business disruption and reputational damage are wholly economic and do not constitute irreparable harm (see Darwish Auto Group, LLC v TD Bank, N.A., 224 AD3d 1115, 1118 [3d Dept 2024]).
Finally, the equities do not favor petitioners. "[T]he legislative intent behind [the Cannabis Law] was to, among other things, 'regulate, control, . . . [and] reduce the illegal drug market . . . , reduce participation of otherwise law-abiding citizens in the illicit market . . . [and] protect the public health, safety and welfare of the people of the state' " (Matter of Cannabis Impact Prevention Coalition, LLC v Hochul, ___ AD3d ___, ___, 2026 NY Slip Op 01573, *3 [3d Dept 2026], quoting Cannabis Law § 2). In the "General Prohibitions and Restrictions" set forth in Cannabis Law § 125 (1-b), the Legislature decreed that cultivating, processing or distributing cannabis product without the appropriate registration, license or permit "presents a danger to public health, safety, and welfare." On this record, we find that the public health and safety risks caused by the unlicensed sale of cannabis products outweigh any contingent injury claimed by petitioners. Accordingly, we find that Supreme Court abused its discretion [*9]in restraining respondents from conducting administrative inspections of petitioners' businesses in advance of an adjudication on the merits of their petition.
Clark, J.P., Aarons, Pritzker and Mackey, JJ., concur.
ORDERED that the order and the supplemental order are reversed, on the law, without costs, petitioners' motion denied and preliminary injunction vacated.

Footnotes

Footnote 1
Petitioners later filed an "amended verified petition" purporting to seek a declaration that the Cannabis Law and attendant regulations were unconstitutional. Supreme Court did not convert the proceeding to an action.

Footnote 2
Supreme Court issued, and respondents also appeal from, a supplemental order clarifying the prior order.

Footnote 3
As correctly noted by Supreme Court, petitioners did not assert claims under article 1, § 12 of the NY Constitution, which "provide[s] greater protections [than the Fourth Amendment] . . . in the area of search and seizure" (Matter of Owner Operator Ind. Drivers Assn., Inc. v New York State Dept. of Transp., 40 NY3d at 62 [internal quotation marks and citation omitted]). Accordingly, we limit our analysis to petitioners' Fourth Amendment challenges.

Footnote 4
Supreme Court did not distinguish petitioners' facial and as-applied claims nor find the regulatory scheme invalid on its face; instead, it devised limitations on the scope and manner of inspections that are not inconsistent with the governing statutes or regulations. Supreme Court's own order therefore implied that the inspection framework is capable of constitutional application to the state respondents, which obviates petitioners' facial challenge (see Town of Concord v Duwe, 4 NY3d 870, 874 [2005]).

Footnote 5
Warrantless administrative searches are permissible so long as their subjects have "an opportunity for precompliance review," that is, an opportunity to challenge the search's reasonableness before a "neutral decisionmaker" prior to "fac[ing] penalties for failing to comply" (City of Los Angeles v Patel, 576 US at 421). A CPLR article 78 proceeding provides access to a neutral decisionmaker and may suffice to challenge the reasonableness of regulatory searches under the US Constitution or state law before penalties are issued for failing to comply (see Hudson Shore Assocs. L.P. v New York, 139 F4th 99, 110 [2d Cir 2025]). Unlike Patel, where noncompliant hotel operators could be arrested on the spot for shielding a guest registry from inspection, a licensee's noncompliance here results in a citation followed by a hearing.